643 S.E.2d 110

**Patricia FICKLING, Appellant,**

v.

**CITY OF CHARLESTON, Respondent.**

**No. 4217.**

Court of Appeals of South Carolina.

Heard Jan. 9, 2007.

Decided March 12, 2007.

Rehearing Denied April 19, 2007.

---

**1.** We decide this case without oral argument pursuant to Rule 215, SCACR.

E.T. Moore, Jr. and Angela W. Abstance, both of Barnwell, for Appellant.

James A. Stuckey, Jr., of Charleston, for Respondent.

GOOLSBY, J.:

Patricia Fickling brought this negligence action against the City of Charleston after she stepped into a hole in a sidewalk and fell, sustaining injuries. The sidewalk was located within the municipal limits, but on a right-of-way owned by the State of South Carolina. The trial court, sitting without a jury, granted the City's motion for a "directed verdict,"[1] finding as a matter of law the City had no duty to

---

1. We recognize that a motion for a directed verdict under Rule 50, SCRCP, is appropriate only in jury trials. *See Hinton v. Designer*

*Ensembles, Inc.,* 335 S.C. 305, 318 n. 3, 516 S.E.2d 665, 671 n. 3 (Ct.App.1999), *rev'd on other grounds,* 343 S.C. 236, 540 S.E.2d 94 (2000). Rule 41(b), SCRCP, permits a defendant, when an action is tried, as here, by the court without a jury, to "move for a dismissal." If granted, the dismissal, except in three well-defined instances not applicable here, will operate as an adjudication upon the merits unless the court in its order "otherwise specifies." *Id.*

In this case, the trial court granted a directed verdict pursuant to a motion for a directed verdict made by the City. In doing so, the trial court *specified* it granted the City's motion pursuant Rule 50(a), SCRCP, the rule applicable to motions for directed verdict, and, citing prior opinions of the supreme court and of this court, employed the standard that a trial court must use in determining whether to grant a directed verdict. Moreover, the trial court in its subsequent order denying Fickling's motion for reconsideration again *specified* it had "direct[ed] a verdict in favor of the defendant."

Aside from all that, both parties treated the order appealed from as one granting a directed verdict to the City as a matter of law. Neither brief to this court contained an argument that we should treat the trial court's ruling as an adjudication on the merits. *See Ducworth v. Neely,* 319 S.C. 158, 159 n. 1, 459 S.E.2d 896, 897 n. 1 (Ct.App.1995) (viewing an order of judgment in which the trial court stated it had directed a verdict for the plaintiff as amounting to a judgment on the merits). Indeed, the City in its brief referred to cases in which the directed verdict standard was applied. The City asserted the evidence yielded only one inference and maintained Fickling's "complaint fail[ed] as a matter of law." The City concluded its brief by stating "the court should affirm the trial court's order and *directed verdict."* [Emphasis added.] For her part, Fickling asserted the following: "The [trial] court erred in granting a *directed verdict* to the City where the evidence was capable of yielding more than one inference." [Emphasis added.]

At any rate, an unappealed ruling becomes the law of the case and neither party here took any exception to the method by which the trial court concluded the case. *See Auto Owners Ins. Co. v. Langford,* 330 S.C. 578, 583 n. 2, 500 S.E.2d 496, 498 n. 2 (Ct.App.1998) (noting a trial court's ruling on an issue becomes the law of the case where the appellant fails to take exception to it both before the trial court and on appeal). Certainly, the City should not be heard to complain of a result that its own conduct induced.

Moreover, for us to view the order as an adjudication on the merits would turn the evidence in this case on its head. Instead of viewing the evidence in the light most favorable to Fickling, the non-moving party, which we would be required to do for a directed verdict, we would be required, if this were treated as an adjudication on the merits, to uphold the ruling if there was any evidence to support it, which would be a more favorable standard for the City. We do not believe it would be fair here to sua sponte transform the order in view of the fact that the trial court and both parties have repeatedly treated the motion and ruling in this case as one for a directed verdict as a matter of law. We therefore decline to view the trial court's grant of a directed verdict in the City's favor as an adjudication on the merits, the circumstances

inspect and repair the sidewalk under South Carolina statutory law, general common law, or the theory of a voluntary undertaking. The trial court further found the City had no notice, either actual or constructive, of the defect as a matter of law. Fickling appeals. We affirm in part, reverse in part, and remand.

## FACTS

In October 1999, Fickling visited the City while attending a four-day landscape design class offered at the Charleston Museum. Sometime after 4:00 p.m. on October 13, 1999, Fickling decided to walk down Meeting Street towards the Market Street area to do some shopping after her class. After walking several blocks, Fickling stepped into a hole in the sidewalk on the 300 block of Meeting Street and fell. At the time, the hole was partially covered by leaves. A photograph taken of the area indicates the sidewalk appears to have been crushed in. Large cracks radiated out from a dirt hole that had formed where a portion of the sidewalk had been. In the middle of the dirt hole, however, one piece of concrete remained. The affected area was about two feet long, two feet across, and approximately three and a half inches deep.

Fickling broke her right arm, badly injured her knees, and sustained bruises and abrasions in the fall. She incurred $53,376.66 in medical bills for surgeries on her broken arm and on both of her damaged knees, as well as other medical expenses. She underwent medical treatment from October 1999 to April 2002 as a result of the accident and continues to have pain from her injuries.

Fickling filed this negligence action against the City in October 2002, alleging the City's failure to maintain the sidewalk proximately caused her injuries.[2]

---

being what they are in this instance, particularly since the trial court gave this defendant exactly what it asked for.

2. The City repaired the portion of the sidewalk at issue, as well as several adjoining panels, after Fickling's fall. In a memo dated June 12, 2001, an inspector from the City's Engineering Division noted many of the adjacent panels of the sidewalk were also broken and the sidewalk had collapsed. The inspector opined large vehicles had been parking on the sidewalk, forming a long rut in the concrete and causing

It is undisputed that the section of Meeting Street where the accident occurred is located on a right-of-way owned by the State.[3] The City presented the testimony of Laura Sullivan Cabiness, the Director of the City's Department of Public Service, who stated the City typically repairs sidewalks only after receiving notification of a defect and generally does not conduct inspections. Cabiness stated if someone, such as a member of the public or a City employee, calls in a report about a defect, the call is usually forwarded to either the City's Engineering Division or its Streets and Sidewalks Division, both of which are part of the Department of Public Service, to follow up and inspect the reported defect and determine whether repairs should be made and who is responsible for making the repairs.

When the City receives a complaint about a State-owned right-of-way, the City first notifies the State about the problem and generally will make repairs only if it receives a response from the State explaining the State lacks sufficient funds to make the repairs or if it receives no response from the State. The City receives complaints about streets and sidewalks at its Engineering Division or its Streets and Sidewalks Division and records all complaints. No complaints or work orders were found regarding the area of Meeting Street where Fickling fell.

Fickling presented evidence that the Charleston Police Department has foot patrols, horse patrols, and vehicle patrols on Meeting Street. Parking enforcement officers and sanitation workers also cover Meeting Street. A City fire department station is located about two and a half blocks from where Fickling fell. She contended the City had a duty to maintain the streets and sidewalks and it had notice, either actual or constructive, of the defect. Fickling noted the City fielded calls about defects in the sidewalks and undertook repair and maintenance of sidewalks located within the municipal limits.

The City moved for a directed verdict. The trial court granted the motion, ruling as a matter of law that the City had

---

the surrounding damage. The inspector noted the "Streets and Sidewalks Division was notified on June 8, 2001 with instructions to inspect and repair."

3. Fickling did not bring an action against the State.

no duty to inspect and maintain the sidewalk and that, in any event, it had no actual or constructive notice of the defect. The trial court thereafter denied Fickling's motion to alter or amend the judgment. This appeal followed.

## STANDARD OF REVIEW

 When reviewing the trial court's ruling on a motion for a directed verdict, we must employ the same standard as the trial court—that is, we must consider the evidence in the light most favorable to the non-moving party.[4] When ruling on a motion for a directed verdict, the trial court is required to deny the motion if either the evidence yields more than one inference or its inference is in doubt.[5] When considering a motion for a directed verdict, neither the appellate court nor the trial court has authority to decide credibility issues or to resolve conflicts in the testimony and evidence.[6]

## LAW/ANALYSIS

### I. Statutory Duty

 On appeal, Fickling first argues the trial court erred in granting a directed verdict as to whether section 5–27–120 of the South Carolina Code imposes a statutory duty on the City to keep all streets in good repair and thus to inspect and maintain the sidewalk in question.

Section 5–27–120 generally provides that a city having over one thousand inhabitants shall keep all streets within the city in good repair. This statutory section provides as follows:

The city or town council of any city or town of over one thousand inhabitants shall keep in good repair all the streets, ways and bridges within the limits of the city or town and for such purpose it is invested with all the powers, rights and privileges within the limits of such city or town

---

4. *Sauers v. Poulin Bros. Homes, Inc.*, 328 S.C. 601, 605, 493 S.E.2d 503, 504-05 (Ct.App.1997).

5. *Jinks v. Richland County*, 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003).

6. *Sauers*, 328 S.C. at 605, 493 S.E.2d at 505.

that are given to the governing bodies of the several counties of this State as to the public roads.[7]

The South Carolina Code defines a "sidewalk" as a portion of a street.[8]

■ In *Vaughan v. Town of Lyman,*[9] our supreme court recently considered this precise question and held that section 5–27–120 "does not create a 'special duty' upon which an individual may base a tort action against a municipality."[10] The court explained section 5–27–120 defines a municipality's duty to the general public to maintain its streets, but it does not establish an "identifiable class of persons" intended to be protected and thus the public duty rule[11] would preclude a private right of action based on the statute.[12] Because section 5–27–120 does not impose a duty upon the City in the circumstances present here, we affirm the trial court's grant of a directed verdict as to whether the City had a statutory duty to repair and maintain the sidewalks within the municipal limits.

## II. Common Law Duty or Voluntary Undertaking

Fickling next argues the trial court erred in granting a directed verdict in favor of the City as to whether the City owed her a duty either under the general common law or

7. S.C.Code Ann. § 5–27–120 (2004).

8. *Id.* § 56–5–480 (2006).

9. 370 S.C. 436, 635 S.E.2d 631 (2006).

10. *Id.* at 442, 635 S.E.2d at 635.

11. Under the public duty rule, "public officials are generally not liable to individuals for their negligence in discharging public duties as the duty is owed to the public at large rather than anyone individually." *Id.* at 441, 635 S.E.2d at 634 (quoting *Steinke v. South Carolina Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 388, 520 S.E.2d 142, 149 (1999)). Although the court found section 5–27–120 does not create a private right of action, it noted: "This Court continues to acknowledge the duty of a municipality to maintain its streets; however, we no longer observe the statutory basis for a private right of action. Instead, liability is now imposed through the waiver provisions of the Tort Claims Act." *Id.* at 442, 635 S.E.2d at 635.

12. *Id.* at 443, 635 S.E.2d at 635.

under a theory of voluntary undertaking to maintain the sidewalks within the City limits.

### a. Common Law

In *Vaughan,* a pedestrian brought a negligence action against the Town of Lyman after she tripped and fell on the Lawrence Street sidewalk, injuring her hands, right knee, back, and spine.[13] Over time, the sidewalk had become broken by overgrown tree roots.[14]

The trial court granted summary judgment to the Town, finding as a matter of law the Town did not owe a duty to Vaughan because it did not own, maintain, or control the sidewalk where Vaughan fell.[15] The trial court based its decision on several items, including an affidavit that explained Lawrence Street is owned by Spartanburg County and maintained by the State Highway Department, deeds showing the transfer of Lawrence Street to Spartanburg County, and photographs of street signs that indicated Lawrence Street is part of the State Highway System.[16]

Our supreme court reversed, holding there was a genuine issue of material fact so as to preclude the entry of judgment as a matter of law regarding whether the Town owed a duty to Vaughan to maintain its sidewalks under either the common law or under the theory of a voluntary undertaking.[17]

Regarding a common law duty, the court, citing section 57–5–140 [18] of the South Carolina Code, noted ownership of the street (and sidewalk) is not dispositive because "ownership

---

13. *Id.* at 439–40, 635 S.E.2d at 633.

14. *Id.*

15. *Id.* at 444, 635 S.E.2d at 635.

16. *Id.*

17. *Id.* at 448–49, 635 S.E.2d at 638.

18. S.C.Code Ann. § 57–5–140 (2006) (stating ownership of a highway by the State "shall [not] prevent a municipality from undertaking any improvements or performing any maintenance work on [S]tate highways in addition to what the department is able to undertake with the available funds").

and maintenance of the sidewalk by another entity does not prevent [the Town] from also maintaining or controlling the same sidewalk." [19]

The court noted Vaughan had submitted deposition testimony "to show that [the Town] exercised *at least some control* over Lawrence Street." [20] Specifically, Vaughan had submitted depositions from several persons to show the Town had assumed responsibility for the general maintenance of the streets and sidewalks by removing trees and filling potholes and it fielded citizen complaints about the streets and sidewalks.[21] The Town minutes also contained several references to actions taken by the Town to correct problems related to the Town's sidewalks.[22]

The court observed more than one inference could be drawn from the evidence when it was viewed in the light most favorable to Vaughan, the non-moving party.[23] Summary judgment was, therefore, inappropriate on the issue of the Town's common law duty to Vaughan because, the court held, "there is a genuine issue of fact regarding whether [the Town] exercised *any control over the streets* in the [T]own, specifically Lawrence Street." [24]

■ Similarly, in the current appeal, there is evidence that the City made repairs to sidewalks within the municipality and, thus, exercised *some measure of control* over both the municipal-and State-owned areas. The only limitation was, according to the City, that it would make repairs only as things were reported to it and would first check with the State to see if it would act before making any repairs. This limitation, however, does not alter the fact that the City exercised *some* measure of control over both municipal- and State-owned streets and sidewalks.

---

19. *Vaughan*, 370 S.C. at 444, 635 S.E.2d at 636.

20. *Id.* at 444, 635 S.E.2d at 635 (emphasis added).

21. *Id.* at 444, 635 S.E.2d at 635–36.

22. *Id.* at 444, 635 S.E.2d at 636.

23. *Id.*

24. *Id.* (emphasis added).

The trial court here focused on ownership, stating "although one falls on a city sidewalk, that in itself is not sufficient to establish that the City has *ownership* and, therefore, a duty to inspect and maintain all sidewalks." [Emphasis added.] We believe *Vaughan* has recently clarified however, that ownership is not the dispositive element in evaluating whether a duty exists; rather, control over the premises is the determinative factor.

It is unclear from the *Vaughan* case whether our supreme court would differentiate our current appeal based on the *degree* of control exerted by the City; i.e., the City here purported to exert a "limited" measure of control over property with the municipal limits. The *Vaughan* court did, however, base its determination that summary judgment was inappropriate on the ground there was conflicting evidence as to whether the Town "exercised *any* control" over the streets and sidewalks.[25]

In the current case, as in *Vaughan,* the issue was decided by the trial court as a matter of law and, viewing the evidence in the light most favorable to Fickling, as we are required to do, we hold there is more than one inference that may be drawn as to whether the City exercised *any* control over the sidewalks in the municipal limits, including the sidewalk at issue here. We therefore hold the trial court erred in granting a directed verdict to the City regarding the City's common law duty to maintain the sidewalk on Meeting Street.

## b. Voluntary Undertaking

In *Vaughan,* our supreme court additionally found the issue of whether the Town owed a duty to Vaughan based on a voluntary undertaking of the repair and maintenance of the Town's streets and sidewalks was inappropriately decided as a matter of law on summary judgment because the evidence was susceptible of more than one reasonable inference.[26] The court stated the trial court's decision granting summary judgment "was primarily based on evidence of ownership of Lawrence Street by Spartanburg County and the State's authority

---

25. *Id.* (emphasis added).

26. *Id.* at 447–48, 635 S.E.2d at 637–38.

over the street as a result of including it in the State Highway System." [27] The court noted that ownership was not determinative, however, of whether the Town voluntarily undertook the duty to maintain the Town's streets and sidewalks, including Lawrence Street.[28]

Our supreme court stated Vaughan had presented some evidence regarding a voluntary undertaking, such as references to sidewalk maintenance in the Town minutes, Town ordinances regulating the sidewalks, and deposition testimony showing the Town was aware of the condition of Lawrence Street without reporting the condition to any other authority.[29] Vaughan also submitted evidence indicating the Town had previously handled complaints about the sidewalks from Town residents and had removed hazardous tree roots disrupting the sidewalks.[30] Our supreme court concluded there was "a genuine issue of fact regarding whether [the Town] undertook the duty of maintaining city streets, even though all city streets were not owned by [the Town]." [31]

In the appeal now before us, Fickling presented evidence that the City had fielded complaints from residents about hazards to the sidewalks, had maintained a log of calls from residents, including repair calls, and had a policy in place, as well as employees, to handle repairs to sidewalks within the municipal limits, including those that were City-owned and those that were non-owned. The trial court expressly found the City admittedly engaged in a voluntary undertaking in this instance, but noted in its order: "Although the City in the instant case admits that it undertakes an obligation to maintain and repair public sidewalks, it only does so when it has notice of the dangerous condition or when the City creates the condition itself." In this case as in *Vaughan*, however, we believe there was a genuine issue of material fact

27. *Id.* at 447, 635 S.E.2d at 637.

28. *Id.* at 448, 635 S.E.2d at 637–38.

29. *Id.* at 447, 635 S.E.2d at 637.

30. *Id.*

31. *Id.* at 447–48, 635 S.E.2d at 637.

as to whether the City had undertaken a duty of maintaining streets within the municipality, including Meeting Street.

Moreover, there was conflicting evidence presented as to whether the City had constructive notice [32] of the defect in the Meeting Street sidewalk. In the light most favorable to Fickling, there was at least some evidence that (1) there were numerous City personnel within the area of the defect who could have seen and reported the problem; [33] (2) the condition

---

**32.** Fickling does not argue on appeal that the City had *actual* notice of the defect in the Meeting Street sidewalk.

**33.** The record reflects City employees, such as fire department personnel, police officers, and others regularly traversed the area where the sidewalk was damaged and the defect was in a high-traffic area of the City. *Cf., e.g., Robison v. White City*, 77 Kan. 293, 94 P. 141, 142 (1908) (discussing, with approval, the trial court's instruction that if the defendant city or its officers and agents, by the exercise of ordinary care and diligence, could have known of or discovered the existence of a defect in the sidewalk and remedied the condition, the law implies notice to the defendant city of the existence of the condition); *Keen v. Mayor of Havre de Grace*, 93 Md. 34, 48 A. 444, 444–45 (1901) (holding that, where the plaintiff stepped in a hole in the sidewalk and injured himself, there was a question of fact as to whether the city had constructive notice of the defect; the court noted that where there was evidence the hole was in the bed of the sidewalk, was not obscured by anything from the full view of anyone passing along that part of the sidewalk, and had been present for several weeks, the city's negligence was for the jury because a jury could find either that the city was negligent in not making the repair if its proper officers or agents knew of its existence or, if they did not have knowledge of its existence, that they did not exercise that active vigilance to see that the sidewalk was kept in a reasonably safe condition for public travel); *see id.* at 445 ("By 'constructive notice' is meant such notice as the law imputes from the circumstances of the case. It is the duty of the municipal authorities to exercise an active vigilance over the streets, to see they are kept in a reasonably safe condition for public travel. *They cannot fold their arms and shut their eyes, and say they have no notice.* After a street has been out of repair ... and there has been full opportunity for the municipality, through its agents charged with that duty, to learn of its existence and repair it, the law imputes to it notice, and charges it with negligence." (quoting *Todd v. City of Troy*, 61 N.Y. 506, 509 (N.Y.1875) (emphasis added))); *Todd v. City of Troy*, 61 N.Y. 506, 509–10 (N.Y. 1875) (holding this negligence case was properly submitted to a jury where the plaintiff slipped and fell on ice extending across the city sidewalk that had accumulated for several days and was concealed by a slight covering of snow—the water came down a conductor from a nearby building and had accumulated on prior occasions; the court concluded a question of fact existed as to the city's negligence in failing to keep the sidewalk in a suitable condition for public travel).

had existed for a while;[34] and (3) the City had an established policy in place to deal with defects in the sidewalks, and problems with the sidewalks were an expected and "recurrent"[35] or "continual"[36] condition of which it had notice.[37]

We therefore conclude the issue regarding whether the City owed Fickling a duty on the basis of a voluntary undertaking

---

34. According to the City's Director of the Department of Public Service (Cabiness), the hole "had probably been that way for a while...." *See generally Jindra v. City of St. Anthony*, 533 N.W.2d 641, 644 (Minn.Ct. App.1995) ("Constructive notice arises when a condition has existed for such a period of time that a municipality in the use of reasonable care should have discovered the condition."). *Cf., e.g., Wintersteen v. Food Lion, Inc.*, 344 S.C. 32, 36–37 n. 1, 542 S.E.2d 728, 730 n. 1 (2001) (noting generally that constructive notice can be established by evidence that a defect existed for a sufficient length of time for the defendant to have discovered the defect and remedied it).

35. *Wintersteen*, 344 S.C. at 37 n. 1, 542 S.E.2d at 730 n. 1.

36. *Id.*

37. The City had a policy in place for handling recurring maintenance to streets and sidewalks within the municipal limits. Both the City's Engineering Division and its Streets and Sidewalks Division accepted complaints about sidewalk maintenance issues and responded to problems by having its employees make follow-up inspections to determine the nature of the defect and to make the necessary repairs. *Cf. Pinckney v. Winn–Dixie Stores, Inc.*, 311 S.C. 1, 4, 426 S.E.2d 327, 329 (Ct.App.1992) (holding Winn–Dixie was not entitled to a directed verdict in its favor in this slip-and-fall case because there was evidence from which a jury might have inferred the store manager had knowledge of the potential hazard created by the continuous presence of fallen leaves on the floor in the area near the store's poinsettia display); *Henderson v. St. Francis Cmty. Hosp.*, 303 S.C. 177, 180–81, 399 S.E.2d 767, 769 (1990) (holding, in case where the plaintiff slipped and fell on sweet gum balls from nearby trees, a jury question existed as to the negligence of the hospital in failing to either remove the trees or employ safety measures when it had actual and constructive knowledge of the dangerous condition caused by the trees; the hospital had previously been advised to remove the trees because they produced debris that created a maintenance problem).

Our supreme court has observed that both *Pinckney* and *Henderson* involved "conditions [that] were of such a recurrent nature that the defendants were chargeable with constructive notice on the day of the accident" because they established certain patterns "wherein the recurrence is of such a nature as to amount to a continual condition" and this, coupled with other factors, "may be sufficient to create a jury issue" as to constructive notice. *Wintersteen*, 344 S.C. at 37 n. 1, 542 S.E.2d at 730 n. 1.

should not have been decided as a matter of law and the trial court erred in granting a directed verdict to the City on this basis.

## CONCLUSION

Based on the foregoing, the grant of a directed verdict in favor of the City on the ground section 5-27-120 imposes no statutory duty on the City that would create a private right of action is affirmed. The grant of a directed verdict to the City on the issues of whether there was a common law duty or a voluntary undertaking by the City is reversed and remanded for further proceedings in accordance with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

STILWELL and SHORT, JJ., concur.