THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 BPD Diversified, Inc., d/b/a Bank Planning and Design, Respondent,
 v.
 Benchmark Capital Investment, LLC, Appellant.
 
 
 

Appeal From Greenville County
 Charles B. Simmons, Jr., Master-In-Equity
Unpublished Opinion No.  2007-UP-347
Submitted June 1, 2007  Filed July 6, 2007
AFFIRMED

 
 
 
 Randall Scott Hiller, of Greenville, for Appellant.
 Theodore Von Keller, of Columbia, for Respondent.
 
 
 

PER CURIAM:  BPD Diversified, Inc., d/b/a Bank Planning and Design (BPD), brought this action for foreclosure of a mechanics lien and breach of contract against Benchmark Capital Investment, LLC (Benchmark).  Benchmark failed to answer the complaint and went into default.  BPD obtained separate judgments in its favor on each of the claims.  Benchmark appeals, arguing the master erred in denying its motion to be relieved from the default judgment and in awarding an excessive amount of attorneys fees to BPD.  We affirm.[1]
FACTS
On March 17, 2005, BPD signed an Architectural and Construction Agreement to design, remodel, furnish, and equip a bank branch facility owned by Benchmark in Greenville, South Carolina.  The agreement provided BPD would receive minimum compensation of $24,000.00 for architectural services and at least $24,000.00 for construction services. 
 
On October 14, 2005, BPD filed a Notice of Mechanics Lien upon the property for $16,607.09 for labor performed and materials provided to Benchmark.  The notice was accompanied by a Verification of Statement of Account signed by BPDs president.  The Notice of Mechanics Lien and the Verification of Statement of Account were served upon the registered agent for Benchmark, Charles Smith, on October 13, 2005. 
 
Smith gave the documentation to C.D. Candler, the president of Benchmark.  Candler met with his attorney regarding the mechanics lien and was reportedly instructed that he did not need to take action unless a lawsuit was filed to foreclose the lien. 
 
On November 29, 2005, BPD filed a summons and complaint against Benchmark asserting claims for foreclosure of the mechanics lien and breach of contract.  BPD sought $16,607.09 for the lien, plus interest, attorneys fees, and costs.  On the breach of contract claim, BPD sought $61,170.70, plus interest and costs.  The same day, BPD also filed a lis pendens.    
According to an Affidavit of Service, Smith was served with these pleadings on December 10, 2005.  In his own affidavit, Smith admitted being served on December 10th, but stated that he thought the documents were the same as the original mechanic[]s lien, so he left a copy of them on Candlers desk.  At that time, both Candler and Benchmarks attorney were out of the country.  On January 13, 2006, having received no answer to the pleadings or request for an extension of time, BPD filed an affidavit of default.    
The Honorable G.E. Welmaker filed an Order of Default and Order of Reference on February 13, 2006, finding Benchmark had not answered or otherwise filed a response to the pleadings and therefore was in default. Judge Welmaker separated the mechanics lien and the breach of contract actions and referred the mechanics lien claim to the Master-In-Equity for Greenville County to make findings of fact and conclusions of law; dispose of any and all issues and enter a final judgment in the case; order a judicial sale on any day . . . ; [and] hear and dispose of any issues after sale or judgment . . . .  In the same order, Judge Welmaker stated the claim for breach of contract has been or will be resolved by the issuance of a default judgment.  Thereafter, Judge Welmaker filed a separate Order for Judgment by Default on March 1, 2006, granting BPD a default judgment against Benchmark for $61,170.70 for its breach of contract claim. 
 
On March 1, 2006, BPDs attorney mailed a Notice of Hearing to Benchmark advising it that a hearing regarding the mechanics lien claim had been scheduled before the Master-In-Equity on March 23, 2006, following which a final judgment would be issued.  After receiving this notice, Candler searched his office and discovered the 2005 pleadings on his desk.    
On March 21, 2006, Benchmark filed a Motion to Set Aside Default Pursuant to Rule[s] 55 and 60 of SCRCP asking the court to set aside the default judgment on the grounds that the Defendant[]s neglect in [a]nswering the Complaint is excusable; that the Complaint does not properly and adequately verify the damages by verified statement of account; [and] even if the statement of account is proper the damages verified are patently inconsistent on their face and the [D]efendant has a meritorious defense.      
The master held a hearing regarding the claim for foreclosure of the mechanics lien as scheduled on March 23, 2006.  At the start of the hearing, BPDs counsel was made aware, for the first time, of Benchmarks motion regarding the default and stated she had not been served with a copy of it.  Benchmarks attorney noted the motion was on its way to BPD.  The master stated the hearing would go on as scheduled, explaining, [A]t this point I dont have any basis to do anything other than proceed.   Benchmarks attorney expressly consented to continuation of the hearing on the foreclosure.  The parties thereafter focused solely on the amount of attorneys fees that should be awarded on the mechanics lien action, with Benchmarks attorney questioning BPDs attorney as to the basis for the amount claimed.  Benchmark did not specifically dispute any of the other amounts sought in the mechanics lien action at the hearing.   
The master filed a Decree for Foreclosure of Mechanics Lien on March 28, 2006, awarding $16,607.09 for foreclosure of the lien, $4,000.00 for attorneys fees, plus interest and costs, for a total judgment of $21,974.64.  The master noted the default judgment obtained for breach of contract was a separate debt owed by the Defendant, completely unrelated to the debt established herein, as secured by a mechanics lien.[2]  
On April 6, 2006, the master held a hearing on Benchmarks motion regarding the default.  The master initially discussed the fact that Benchmarks motion was made pursuant to both Rule 55 and Rule 60 of the South Carolina Rules of Civil Procedure, but the master stated he believed Rule 60 would then be applicable since the default was already entered.  None of the parties objected to the application of Rule 60, and they proceeded to argue whether excusable neglect had been established as required under the rule.[3]  
In early May 2006, the master denied Benchmarks motion for relief from the default judgment, finding Benchmark had not established excusable neglect under Rule 60(b), SCRCP.  Prior to this ruling, Benchmark had filed on April 27, 2006 a motion to alter or amend the judgment for foreclosure of the mechanics lien, arguing the award of $4,000.00 for attorneys fees was excessive.  The master denied this motion on May 23, 2006, finding the amount of the attorneys fees awarded was appropriate. 
 
LAW/ANALYSIS
I.  Default Judgment
On appeal, Benchmark argues the master abused [his] discretion in not setting aside the default because Benchmark demonstrated it acted promptly upon receiving notice of the default judgment, its neglect was excusable, and it had a meritorious defense.[4]  
Rule 60(b)
The proper procedure for challenging a default judgment is to move the trial court to set aside the judgment pursuant to Rule 60(b), SCRCP.  Winesett v. Winesett, 287 S.C. 332, 334, 338 S.E.2d 340, 341 (1985).  Rule 60(b)(1) of the South Carolina Rules of Civil Procedure permits a court to relieve a party from a final judgment upon a finding of mistake, inadvertence, surprise, or excusable neglect.  Rule 60(b)(1), SCRCP.  The movant must also show a meritorious defense.  Tri-County Ice & Fuel Co. v. Palmetto Ice Co., 303 S.C. 237, 242, 399 S.E.2d 779, 782 (1990).    
 
Whether to grant or deny a motion under Rule 60(b) lies within the sound discretion of the judge.  BB & T v. Taylor, 369 S.C. 548, 551, 633 S.E.2d 501, 502 (2006).  Our standard of review, therefore, is limited to determining whether there was an abuse of discretion.  Id. at 551, 633 S.E.2d at 502-03.  An abuse of discretion arises where the judge issuing the order was controlled by an error of law or where the order is based on factual conclusions that are without evidentiary support.  Id. at 551, 633 S.E.2d at 503.
A party seeking to set aside a judgment pursuant to Rule 60(b) has the burden of presenting evidence to support the claim for relief.  Bowers v. Bowers, 304 S.C. 65, 67, 403 S.E.2d 127, 129 (Ct. App. 1991).  In this case, Benchmark contends the judgment should be set aside for excusable neglect.  Excusable neglect is generally defined as follows:

 A failure  which the law will excuse  to take some proper step at the proper time (esp. in neglecting to answer a lawsuit) not because of the partys own carelessness, inattention, or willful disregard of the courts process, but because of some unexpected or unavoidable hindrance or accident . . . .

Blacks Law Dictionary 1055 (7th ed. 1999).  
In this case, the registered agent for Benchmark, Charles Smith, was served with the pleadings for foreclosure of the mechanics lien on or about December 10, 2005.  Smith incorrectly assumed these documents were the same as the original Notice of Mechanics Lien, and he placed the pleadings on Candlers desk.  The pleadings remained on Candlers desk until he discovered them several months later in March 2006, well after the time allowed for a responsive pleading.  Benchmarks explanation for its failure to take any action on the pleadings is that Smith did not recognize these were new pleadings; Candler, Benchmarks president, was on his honeymoon in South America in December 2005; and Benchmarks attorney was also out of the country for part of this time. 
 
In denying the motion to set aside the default judgment, the master found [t]he registered agent failed to take notice of the language in the [s]ummons which alerted him to the nature of the proceedings and the results of inaction.  The master determined the registered agents alleged mistake in believing the lis pendens, summons and complaint to be the same as the mechanics lien does not amount to excusable neglect, as [l]ack of familiarity with legal proceedings is unacceptable and the court will not hold a layman to any lesser standard than is applied to an attorney, quoting Hill v. Dotts, 345 S.C. 304, 310, 547 S.E.2d 894, 897 (Ct. App. 2001).[5]    
The master further noted that [c]onfusion over litigation does not, by itself, warrant relief from default.  The master stated BPD would be prejudiced by the delay in the sale and lost expense attributed to the advertisement if the Court were to set aside the default judgment.  The master concluded that [Benchmark] has failed to show excusable neglect as required under Rule 60(b) of the South Carolina Rules of Civil Procedure.  
 
We find there is evidence to support the masters determination and hold the master properly exercised his discretion in not setting aside the default judgment based on excusable neglect.  In this case, Benchmark had a duty to monitor the progress of its case, especially since it was aware that a Notice of Mechanics Lien had already been filed and it was on notice to expect an action to foreclose the lien.  The registered agents failure to recognize and appreciate the significance of the pleadings seeking foreclosure of the lien and his mistaken belief those pleadings were additional copies of the original Notice of Mechanics Lien is not the type of neglect that is excusable under Rule 60(b).  
 
Based on the foregoing, we affirm the masters ruling upholding the default judgment.  See Stewart v. Floyd, 274 S.C. 437, 440-41, 265 S.E.2d 254, 255-56 (1980) (affirming the trial courts refusal to set aside a default judgment where the defendant, a practicing physician, contended he received two sets of summons and complaints that were so similar that it constituted excusable neglect for him to conclude the second set had been taken care of by the fact that he had given the first set to his attorneys; our supreme court noted that, in this case, the defendants attorneys and his malpractice carrier were alert to the fact that a second action would probably be forthcoming); DeNault v. Holloway Builders, Inc., 271 S.C. 468, 470, 248 S.E.2d 265, 266 (1978) (holding a corporate presidents confusion over receiving two complaints in the same week and his mistaken assumption that service had occurred the same day, thus resulting in the late service of an answer, did not constitute excusable neglect to set aside a default judgment, the court stating [i]n such situations, neglect is present but not excusable neglect entitling a party to relief from a default judgment); cf. Mitchell Supply Co. v. Gaffney, 297 S.C. 160, 375 S.E.2d 321 (Ct. App. 1988) (holding the debtors were not entitled to relief from a default judgment on the basis their attorney failed to properly review the pleadings that were delivered to him; the attorneys neglect was attributable to the client and did not constitute the type of neglect that was excusable under Rule 60(b), SCRCP).
Damages Hearing
Benchmark further argues the master erred in not setting aside the judgment and requiring a damage[s] hearing, the error being that there was no verified statement of account, the claim was unliquidated as a matter of law[,] and the verified pleadings failed to set forth damages in a manner that could be readily ascertained.  Benchmark argues the amount requested was a sum which can only be made certain by computation.   
 
In establishing the amount due under the mechanics lien, the master, citing Rule 55, SCRCP, observed, The present case involved liquidated damages, and Plaintiff properly and adequately verified those damages through a verified statement of account. . . .  A hearing on the damages claimed by Plaintiff is not necessary as the Lis Pendens, Summons and Complaint were properly and adequately verified by a verified statement of account. 
 
Damages are said to be liquidated where the sum is certain or capable of being reduced to certainty based on a mathematical calculation previously agreed to by the parties.  Vaughn Dev., Inc. v. Westvaco Dev. Corp.,  372 S.C. 576, 579-580, 642 S.E.2d 757, 759 (Ct. App. 2007).

 Rule 55(b)(1), SCRCP provides as follows:
 
 When the claim of a party seeking judgment by default is for a liquidated amount, a sum certain or a sum which can by computation be made certain, the judge, upon motion or application of the party seeking default, and upon affidavit of the amount due, shall enter judgment for that amount and costs against the party against whom judgment by default is sought, if that party has been defaulted for failure to appear . . . .  A verified pleading may be used in lieu of an affidavit when the pleading contains information sufficient to determine or compute the sum certain. 
 
 

At the hearing on March 23, 2006, the master heard testimony regarding the mechanics lien.  Counsel for both BPD and Benchmark were in attendance.  Benchmarks counsel examined BPDs counsel regarding her claimed attorneys fees, but did not dispute any of the other amounts BPD had requested.  Thus, Benchmarks counsel had an opportunity to dispute the requested damages prior to the filing of the order foreclosing the mechanics lien on March 28, 2006.  Benchmarks argument that the default judgment should be set aside because of the lack of a damages hearing is, therefore, without merit.
Additionally, the master did not err in issuing a default judgment because the pleadings were, in any event, verified and requested a definite amount.  BPDs complaint included a specific demand for $16,607.00, plus prejudgment interest, attorneys fees, and costs.  The complaint incorporated by reference the Notice of Mechanics Lien, which included a description of Benchmarks property.  The pleadings included a Verification of Statement of Account signed by BPDs president stating the complaint and allegations were true to the best of his knowledge.  They also included a copy of the parties agreement, which set forth the guidelines for minimum compensation.  The computations may be difficult, but the pleadings provided guidance and verification.  
 
Viewed together, these documents satisfy the verification requirements for a mechanics lien.  See Taylor Freezer Sales Co. v. Bachman, 285 S.C. 292, 296, 329 S.E.2d 1, 3 (Ct. App. 1985) (observing that, in determining if a statement of account is satisfactory, the complaint, statement of account, and verification must be considered together); S.C. Code Ann. § 29-5-90 (2007) (noting a statement of account should contain a just and true account of the amount due [], with all just credits given, together with a description of the property intended to be covered by the lien sufficiently accurate for identification, with the name of the owner of the property, if known, which certificate shall be subscribed and sworn to by the person claiming the lien or by someone [o]n his behalf); see also Rule 9(i), SCRCP (regarding verifications of accounts, stating [i]n an action on an account the pleader shall attach a verified copy of the account to the pleading, or if the items of the account are set forth in the pleading, it must be verified).
In cases where the amount of damages is not certain, the court may conduct such hearing or order such references as it deems necessary and proper . . . .  Rule 55(b)(2), SCRCP (emphasis added).  Thus, if the master did not believe these were liquidated damages, the master had the discretion to explore these amounts or to examine the parties further, but it is clear from the record that the master did not find it necessary to go beyond what the parties addressed at the hearing, namely, the amount of attorneys fees.  We conclude the parties did have an opportunity to examine BPD regarding the amounts requested at the scheduled hearing and, further, that a hearing was not required in any case as the amounts sought were verified and ascertainable.  Accordingly, the default judgment for the mechanics lien should not be set aside.
II.  Attorneys Fees
Benchmark next argues the master erred in granting the full amount of attorneys fees requested by BPDs counsel in the mechanics lien action because the amount was excessive.  Benchmark specifically asserts that some of the time billed pertained to the breach of contract claim, for which attorneys fees are not recoverable.        
Under South Carolina law, [t]he costs which may arise in enforcing or defending against the [mechanics] lien under this chapter, including a reasonable attorneys fee, may be recovered by the prevailing party.  S.C. Code Ann. § 29-5-10(a) (2007).  The fee must be determined by the court in which the action is brought but the fee and the court costs may not exceed the amount of the lien.  Id.  
 
The determination as to the amount of attorney fees which should be awarded under the mechanics lien statute is addressed to the sound discretion of the trial court and its decision will not be disturbed absent an abuse of discretion.  Seckinger v. Vessel Excalibur, 326 S.C. 382, 386, 483 S.E.2d 775, 777 (Ct. App. 1997).
In determining a reasonable fee, a court should consider the following six factors:  1) nature, extent, and difficulty of the legal services rendered; 2) time and labor devoted to the case; 3) professional standing of counsel; 4) contingency of compensation; 5) fee customarily charged in the locality for similar services; and 6) beneficial results obtained.  Blumberg v. Nealco, Inc., 310 S.C. 492, 494, 427 S.E.2d 659, 660 (1993); see also Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991) (addressing the factors to be considered in determining a reasonable attorneys fee).
BPDs attorney, Sara Hutchins, submitted an affidavit requesting $4,000.00 as a reasonable attorneys fee for the mechanics lien claim.  Counsel stated she worked twenty-four hours on the case at a rate of $150.00 per hour, and she anticipated an additional three hours would be necessary following the hearing.  She also itemized costs of $850.00 incurred in the action. 
 
At the hearing on damages for the mechanics lien, Benchmarks attorney questioned Hutchins about the time she devoted solely to the mechanics lien claim.  Hutchins explained that she prepared one complaint that included claims for both foreclosure of the mechanics lien and breach of contract, and one lis pendens.  She stated any time that would indirectly be attributable to the breach of contract claim was minimal, however, as it ended in a default judgment.  Benchmark raised no objection to the amount of costs itemized in the affidavit.[6]  
 
In awarding BPD attorneys fees and again in addressing Benchmarks motion to alter or amend, the master expressly considered the relevant factors in Blumberg before finding $4,000.00 was a reasonable attorneys fee for the Plaintiffs attorney for services performed and anticipated to be performed until final adjudication of the within action.  In making the award, the master noted the fee covered the time and labor devoted to the case, including reviewing the various loan documents, performing the title search, preparing, filing and serving the Mechanics Lien and the pleadings herein[,] as well as preparing for the hearing, including preparing this decree and other documents requested by the Court, attending the hearing, preparing for and attending the sale, and preparing any post-sale documents requested by the Court.  
 
Testimony at the hearing, Hutchinss affidavit, Benchmarks continued intertwining of the two claims, and the number of pleadings, motions, and hearings involved, all support the masters decision to award BPD $4,000.00 in attorneys fees.  Accordingly, we hold the master considered the appropriate factors and did not abuse his discretion in awarding $4,000.00 in attorneys fees to BPD.
AFFIRMED.
HEARN, C.J., KITTREDGE, J., and CURETON, A.J., concur.

[1]  We decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  At the foreclosure hearing, BPDs counsel stated the breach of contract claim was for architectural fees, whereas the mechanics lien was for construction and contracting services provided.  Counsel stated the amount requested for the mechanics lien was not included in the judgment by default [BPD] received on the breach of contract issue. 
 
[3]  See Fickling v. City of Charleston, 372 S.C. 597, 601, 643 S.E.2d 110, 112 (Ct. App. 2007) (stating a trial courts ruling on an issue becomes the law of the case where the appellant fails to take exception to it both before the trial court and on appeal). 
 
[4]  The notice of appeal challenges three orders issued by the master regarding BPDs claim for foreclosure of a mechanics lien.  To the extent Benchmarks brief can be construed as raising issues regarding the default judgment for breach of contract, we note these issues are not properly before us.  The circuit court, in a separate order, entered the default judgment for the breach of contract claim.  The only claim referred to the master was for foreclosure of the mechanics lien, and that is the only matter addressed in the masters orders.  Accordingly, we make no determination regarding the breach of contract claim.
[5]  In Hill, the defendants mother sent a letter to the plaintiff on the defendants behalf after the defendant received the complaint, but the defendant did not serve a responsive pleading.  Id. at 306-07, 547 S.E.2d at 895.  We held the defendants failure to understand the legal process is [not] a sufficient reason to excuse his tardy reply.  Id. at 310, 547 S.E.2d at 897.  We noted a party has a duty to monitor the progress of his case and to timely respond when duly served with a summons and complaint.  Id.  
 
[6]  To the extent Benchmark attempts on appeal to contest the amount of costs awarded and to argue the total included costs that were not recoverable, no issue is preserved in this regard.  See, e.g., Washington v. Whitaker, 317 S.C. 108, 114, 451 S.E.2d 894, 898 (1994) ([I]t is well settled that a contemporaneous objection must be made to preserve an argument for appellate review.).