**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA
In The Court of Appeals**

Estate of John Fortney, deceased, by his duly appointed Personal Representative, Constance S. Fortney, Appellant,

v.

Berkeley Electric Cooperative, Respondent.

And

John Steven Robinson, Appellant,

v.

Berkeley Electric Cooperative, Respondent.

Appellate Case No. 2016-000521

Appeal From Berkeley County
Roger M. Young, Sr., Circuit Court Judge

Unpublished Opinion No. 2018-UP-283
Heard May 9, 2018 – Filed June 27, 2018

**AFFIRMED**

Kevin B. Smith, of Hoffman Law Firm, of North

Charleston; and Andrew Gould and Don C. Keenan, both
of Keenan Law Firm, of Atlanta, for Appellants.

John B. Williams and J. Jay Hulst, both of Williams &
Hulst, of Moncks Corner; and Pope D. Johnson, III, of
Columbia, for Respondent.

––––––––––––

**PER CURIAM:**  Constance Fortney, as the personal representative of the estate of John Fortney, and John Robinson appeal the trial court's order finding in favor of Berkeley Electric Cooperative in their suits for negligence.  We affirm.

## FACTS/PROCEDURAL BACKGROUND

On April 23, 2008, John Fortney, John Robinson, and two other men were setting up tents for a charity event at Thornhill Farms in Charleston County.  While moving one of the erected tents, the center spire of the tent[1] struck a Berkeley Electric Cooperative (BEC) high voltage power line.  John Fortney and another man were electrocuted and died.  John Robinson and the fourth man were injured.

On June 23, 2009, Constance Fortney, as the personal representative of the estate of John Fortney, filed wrongful death and survival actions against BEC.  John Robinson also filed a personal injury action against BEC.  In their complaints, Fortney and Robinson (Appellants) claimed the BEC power line at issue did not meet the National Electric Safety Code (NESC)[2] clearance requirements at the time of the accident.  In asserting negligence on the part of BEC, Appellants alleged BEC failed to install and maintain its power lines at a minimum safe height of 18.5' at the power line's lowest point between adjoining power poles.

––––––––––––

[1] The tent measured 20' x 20' and its center spire extended 17'9" above the ground.

[2] According to Tim Mobley, BEC's vice president, the purpose of the NESC rules "is a practical safeguarding of persons during the installation, operation, or maintenance of electrical supply and communication lines and associated equipment.  These rules contain basic provisions that are considered necessary for the safety of employees and the public under the specified conditions.  The code is not intended as a design specification or as an instruction manual."

In its answers to the complaints, BEC asserted the defenses of (1) a general denial; (2) comparative negligence; (3) assumption of the risk; and (4) liability, if any, apportioned pursuant to section 25-38-15 of the South Carolina Code (2007).

The actions were tried before the trial court without a jury. The following evidence was presented at trial. BEC built the power line at issue in 1993. According to BEC, the line was built based upon the guidelines of the Rural Utility Services (RUS)[3]. Power lines built to RUS guidelines have a neutral conductor with a mid-span clearance of 20' and a primary conductor with a mid-span clearance of 24'. The NESC requires a primary conductor line be built with a mid-span clearance of 18.5'.

On April 24, 2008, the day after the accident, the clearance of the power line at the point of contact with the tent was 18'2". Subsequently, on May 9, 2008, the mid-span clearance of the line was measured at 16'11".

The NESC states "[l]ines . . . shall be inspected at such intervals as experience has shown to be necessary." BEC's inspection program provides that all of BEC's systems be inspected on an eight-year cycle pursuant to a pole inspection contract. The pole inspector is required to report any dangerous conditions found. Additionally, BEC employees are instructed to visually inspect BEC lines during their normal work day and report and repair any defects noted. Electrical engineer and BEC expert witness Eric Jackson testified BEC's inspection program complied with the requirements of the NESC and was a common method of performing inspections by utilities around the country.

The line at issue was inspected in 2002 as part of BEC's pole inspection program. No clearance defect was noted in that inspection. In 2003, a BEC lineman repaired one of the poles supporting the power line at issue. He did not observe a clearance defect in the line.

Jackson testified there was no evidence BEC was aware of any defect in the line and BEC had no obligation under the NESC to repair a defect about which BEC had no knowledge. Jackson further opined to a reasonable degree of engineering certainty that the line had the proper clearance at the time of construction. He noted any improper sag in the line would have been easily recognizable by BEC

---

[3] The RUS, a part of the Department of Agriculture, is BEC's lender and provides construction guidelines to electric cooperatives throughout the United States.

employees. Finally, he concluded the clearance of the line was altered when struck by the tent.

Isaiah Ward, the crew chief of the BEC crew who built the line in 1993, testified the line was built according to RUS guidelines with the mid-span sag of the primary line 24' above ground.

John Dagenhart, an electrical engineer and expert witness for Appellants, testified he believed the line at issue was improperly built with excessive sag. However, this testimony differed from the testimony he gave in a 2012 deposition. In 2012, Dagenhart testified he had never seen a construction crew build a line with excessive sag and he had no opinion as to when or what caused the line at issue to have excessive sag.

On February 10, 2016, the trial court issued an order granting judgment in favor of BEC. The trial court found Appellants failed to produce any credible evidence BEC constructed the power line at issue in violation of RUS or NESC rules or with excessive sag. The court further found BEC was not liable as a result of any alleged failure to inspect the line for compliance with the clearance requirements of the NESC. The court concluded the evidence failed to demonstrate BEC "created, or knew, or should have known of the clearance defect." Finally, while the court found it was unnecessary to address the comparative negligence of Appellants, it included a footnote with an "alternative finding" that Appellants' negligence in "eye-ball[ing]" the height of the line was greater than any negligence by BEC. This appeal followed.

## STANDARD OF REVIEW

"In an action at law tried without a jury, the trial judge's findings have the force and effect of a jury verdict upon the issues and are conclusive on appeal when supported by competent evidence." *Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 307, 698 S.E.2d 773, 777 (2010). "Accordingly, [an appellate court's] scope of review is limited to determining whether the findings are supported by competent evidence and correcting errors of law." *Id.*

## LAW/ANALYSIS

## I.      Standard of Care

Appellants argue the trial court failed to address the applicable standard of care in its order and, "from the context and the discussion engaged in by the trial court," it appears the court erroneously applied the ordinary standard of care to both parties.

We find this argument is not preserved for our review. Appellants assert they reiterated throughout the trial that electricity providers are held to a higher standard of care. While Appellants did assert their position to the trial court, the trial court did not make a finding as to the applicable standard of care in its order. Because the trial court failed to rule on the issue, and Appellants did not file a Rule 59(e), SCRCP, motion requesting a ruling, Appellants' argument is unpreserved. *See Pye v. Estate of Fox*, 369 S.C. 555, 565, 633 S.E.2d 505, 510 (2006) ("Generally, an issue must be raised to and ruled upon by the [trial] court to be preserved."); *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) (noting a party must file a Rule 59(e), SCRCP, motion "when an issue or argument has been raised, but not ruled on, in order to preserve it for appellate review").

## II. Latent Defect

Appellants argue the trial court erred in applying latent defect analysis where the evidence established the existence of a defect, which was discoverable by trained personnel upon reasonable inspection.

This issue is not preserved for our review because Appellants failed to raise any objection to the alleged latent defect finding. *See Pye*, 369 S.C. at 565, 633 S.E.2d at 510 ("Generally, an issue must be raised to and ruled upon by the [trial] court to be preserved.").

Moreover, the trial court did not find the condition of the line was a latent defect. The term "latent defect" is not found anywhere in the trial court's order. A latent defect is one which could not have been discovered by a reasonably careful inspection. *Callander v. Charleston Doughnut Corp.*, 305 S.C. 123, 125, 406 S.E.2d 361, 362 (1991). Here, the trial court found the condition of the line was open and obvious to Appellants and noted Appellants recognized the hazard posed by the line before they attempted to move the tent.

Appellants argue the trial court's reliance on *Grier v. Cornelius*, 247 S.C. 521, 148 S.E.2d 338 (1966) is evidence the court considered the power line a latent defect. We disagree. The trial court cited *Grier* for the principle that "a defendant is not liable for an injury from an equipment failure about which the defendant had no notice." The trial court did not cite *Grier* to support a latent defect finding.

## III.    Motion for Directed Verdict

Appellants argue the trial court erred in failing to grant their motion for directed verdict at the close of all evidence.

After resting their case, Appellants moved for a directed verdict, arguing the evidence was susceptible to only one reasonable inference—that BEC was negligent and such negligence was the sole proximate cause of Appellants' injuries. The trial court denied the motion, ruling that even if it assumed BEC deviated from the standard of care, other questions of material fact remained.

At the close of all evidence, Appellants moved again for a directed verdict. Appellants argued because the power line was hanging below the required height after the accident, BEC's negligence had been established in that "they were unreasonable in letting the line get where it is."  Appellants then informed the trial court they "just wanted to give [the court] a preview" and asked the court to delay ruling on the motion until Appellants briefed the matter.  Appellants did not submit briefs to the trial court and the court never ruled on the second directed verdict motion.

First, we note "a motion for a directed verdict under Rule 50, SCRCP, is appropriate only in jury trials."  *Fickling v. City of Charleston*, 372 S.C. 597, 601 n.1, 643 S.E.2d 110, 112 n.1 (Ct. App. 2007).  Furthermore, because the trial court did not rule on Appellants' motion and Appellants failed to raise their argument in a Rule 59(e), SCRCP, motion, Appellants' argument is not preserved for our review.  *See Pye*, 369 S.C. at 565, 633 S.E.2d at 510 ("Generally, an issue must be raised to and ruled upon by the [trial] court to be preserved.").

## IV.    Comparative Negligence

Appellants argue the trial court erred in applying an ordinary standard of care to BEC in finding Appellants' claims were barred under the principles of comparative negligence.

In a footnote at the end of its order, the trial court included an alternative finding that Appellants' negligence outweighed any negligence on the part of BEC.  The court found the condition of the power line was open and obvious and the hazard posed by the line was recognized and discussed by the men before they moved the

tent. The court further found Appellants violated the OSHA ten-foot rule which prohibits untrained workers from coming within ten feet of an overhead line.

Based upon our disposition herein, we need not address the trial court's alternative grounds regarding comparative negligence. *See Whiteside v. Cherokee Cty. Sch. Dist. No. One*, 311 S.C. 335, 340-41, 428 S.E.2d 886, 889 (1993) (finding the court need not address remaining issue when resolution of prior issue is dispositive).

**CONCLUSION**

The decision of the trial court is

**AFFIRMED.**

**LOCKEMY, C.J., and SHORT and WILLIAMS, JJ., concur.**