664 S.E.2d 450

**Matthew A. GIANNINI, Sr., Personal Representative for the Estate of Deborah Jane Giannini, deceased; Tracy Golden and Roderic R. Bradley, Respondents/Appellants,**

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Appellant/Respondent.**

No. 26508.

Supreme Court of South Carolina.

Heard Nov. 14, 2007.

Decided June 23, 2008.

Rehearing Denied July 23, 2008.

574

Andrew F. Lindemann, of Davidson, Morrison & Lindemann, Frank B. McMaster and John Gregg McMaster, both of Tompkins & McMaster, all of Columbia, for Appellant–Respondent.

Charles L. Henshaw, Jr., of Furr, Henshaw & Ohanesian, Jeffrey Scott Holcombe, of McDougall & Self, Robert C. Ashley, of Ormand, Ashley & Gibbons, and Sherod H. Eadon,

Jr., of Lee, Eadon, Isgett & Popwell, all of Columbia, for Respondents–Appellants.

Justice WALLER:

These consolidated appeals arise out of tort claims actions filed by the plaintiffs against the South Carolina Department of Transportation (SCDOT). The jury returned verdicts in favor of the plaintiffs; the trial court reduced the verdicts pursuant to the S.C. Tort Claims Act, S.C.Code Ann. § 15–78–10 et *seq.* The plaintiffs and SCDOT appeal. We affirm.

## FACTS

These cases arise out of an automobile accident which occurred on January 4, 2000, on Interstate 77 (I–77) in Columbia, between the Boyden Arbor overpass and Percival Road. At 3:10 p.m., a Ford Expedition driven by Barry Harp, while heading north on I–77, hydroplaned and crossed the center median into the southbound lanes, striking cars driven by Deborah Giannini, and Tracey Golden. Roderic Bradley was a passenger in the vehicle driven by Golden. Giannini was killed; Golden and Bradley suffered serious bodily injuries.

The plaintiffs filed tort claim actions alleging SCDOT was negligent in failing to install median barriers which could have prevented Harp's vehicle from crossing over into the southbound lane of traffic. SCDOT answered and claimed it was immune from liability under the S.C. Tort Claims Act, S.C.Code Ann. § 15–78–60(15). The trial court denied SCDOT's motions for directed verdict, and the case proceeded to trial. The jury returned verdicts of $1.5 million dollars to the estate of Giannini, $745,000 to Golden, and $645,000 to Bradley. SCDOT filed motions for judgment notwithstanding the verdict (JNOV) and to reduce the verdicts in accordance with the statutory limitations of liability set forth by the Tort Claims Act. The trial court denied JNOV but reduced the verdicts to $200,000 for each plaintiff. SCDOT and the plaintiffs appeal.

## ISSUES

**SCDOT Appeal:**

1. Did the trial court err in denying SCDOT's motions for directed verdict and JNOV?

2. Did the trial court err in refusing to instruct the jury regarding the non-taxability of their verdict?

## Plaintiffs' Appeal:

1. Does the Tort Claims Act's limitation of recovery to $600,000 total per occurrence violate equal protection?

2. Did the General Assembly violate the "one subject" rule of S.C. Const., Art. III, § 17 by "logrolling" or "bobtailing" the reenactment of statutory caps in the 1994 and 1997 Appropriations Acts?

## Plaintiff Giannini's Appeal:

1. Did the trial court err in apportioning the $600,000 verdict equally among the three plaintiffs, as opposed to apportioning it in proportion to the verdicts?

## 1. SCDOT APPEAL–JNOV

SCDOT contends the trial court erred in denying its motions for a directed verdict and JNOV on numerous grounds. It contends a) it did not owe a duty to install a median barrier where the accident occurred, b) it was entitled to design/discretionary immunity, and c) there is no evidence that the absence of a median barrier was the proximate cause of the accident. We disagree. We find these matters were properly submitted to a jury.

Initially, SCDOT asserts that S.C.Code § 15–78–60(15) shields it from liability. Section 15–78–60(15) sets forth exceptions to the state's waiver of sovereign immunity, stating, in pertinent part, that a governmental entity is not liable for loss resulting from:

(15) absence, condition or malfunction ... of any ... median barrier unless the absence, condition, or malfunction is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice.... Nothing in this item gives rise to liability arising from a failure of any governmental entity to initially place any of the above signs, signals, warning devices, guardrails, or median barriers when the failure is the result of a discretionary act of the governmental enti-

ty. . . . Governmental entities are not liable for the design of highways and other public ways. . . .

SCDOT contends it owed no duty because its actions were the result of the design of the highway, such that it is immune from liability. It cites *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997), in support of its contention. *Summer* is inapposite. In *Summer*, we held SCDOT's insertion of wedging to correct bumps in an intersection which was under construction was essentially a claim of defective construction, such that the plaintiff had no claim because SCDOT was entitled to design immunity. The rationale for our holding in *Summer* was that the intersection was still in the process of being constructed.

Unlike *Summer*, the plaintiffs here claim that SCDOT failed to take proper measures after notice of an existing hazard. Here, the portion of I–77 where the accident occurred was built in 1995, and there had been several crossover accidents within two miles of this accident in which two people had been killed; the accidents had been publicized by local media. This is not a claim of defective construction but, rather, one of failure to take corrective action subsequent to notice of a defect. This case is more analogous to *Wooten v. SCDOT*, 333 S.C. 464, 511 S.E.2d 355 (1999).

In *Wooten*, we affirmed the Court of Appeals' ruling that although SCDOT has design immunity, such immunity does not extend to maintenance issues after the DOT has notice of a hazardous condition. 333 S.C. at 467–468, 511 S.E.2d at 357. In *Wooten*, the plaintiffs claimed SCDOT was negligent in failing to provide traffic lights at an intersection which would allow a pedestrian ample time to cross the street. The Court of Appeals held that although DOT initially had design immunity, such immunity was not "perpetual." The Court of Appeals held that once DOT had notice the intersection was hazardous, it was no longer immune from liability. 328 S.C. 36, 492 S.E.2d 55 (Ct.App.1997). On appeal, this Court affirmed as modified, adopting the trial court's ruling that the immunity provision regarding signs and signals was the more specific one applicable to the case, such that a jury issue was presented as to whether SCDOT was liable. *Wooten v. SCDOT*, 333 S.C. at 468–469, 511 S.E.2d at 357–358 (1999).

■ Accordingly, we find the trial[1] court properly denied SCDOT's motions for directed verdict and JNOV on the issue of whether it breached a duty to the Plaintiffs in failing to install median barriers after notice of cross over accidents along that stretch of I–77.

■ SCDOT also asserts it was entitled to a directed verdict as there was no evidence the absence of a median barrier proximately caused the accident. We disagree.

1. The dissent is "disconcerted" by our lack of discussion of discretionary immunity. It contends SCDOT is entitled to discretionary immunity as a matter of law, because there is evidence in the record that SCDOT took some action after notice of the accidents. Contrary to the dissent's contention, § 15–78–60(15) provides discretionary immunity only for the "failure of any governmental entity to initially place ... signs, signals, warning devices, guardrails, or median barriers when the failure is the result of a discretionary act of the governmental entity." (Emphasis supplied). The dissent correctly points out that, in exercising this initial discretion as to whether to place median barriers or guard rails, the exercise of such discretion includes the right to be wrong. *McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985).

However, the exercise of this discretion in the design of highways is not absolute. It is subject to the requirement that the "absence, condition, or malfunction [be] corrected by the governmental entity responsible for its maintenance **within a reasonable time after actual or constructive notice.**" S.C.Code Ann. § 15–78–60(15). (Emphasis supplied). *Wooten, supra.* It is undisputed that SCDOT was on notice of fatal highway cross over accidents by 1997. It nonetheless failed to install median barriers until December 2000, some eleven months after the accident in this case.

The dissent points to the fact that diagonal yellow lines were placed in the shoulders of the highway in 1998, thereby evincing an exercise of discretion which entitles SCDOT to immunity as a matter of law. On the contrary, when cross-examined, SCDOT's own expert testified that the reason for installation of these lines was that the shoulder lane was extremely wide, and the lines were placed there to delineate that this was not supposed to be a travel lane for drivers. The lines were "not meant to deal with the situation of a car in the normal travel lane losing control, leaving the roadway, and crossing in and over the median." We find a jury question was presented as to whether SCDOT properly took corrective action after notice of the crossover accidents was properly submitted to the jury. *Accord Wooten* (whether SCDOT complied with appropriate professional standard was at least a jury issue); *Pike v. SC Dep't of Transp.*, 343 S.C. 224, 540 S.E.2d 87 (2000) (holding burden of persuasion to establish discretionary immunity is on governmental agency, and the standard is inherently factual; SCDOT may not

Plaintiffs presented the deposition testimony of Darcy Sullivan, a highway transportation engineer. Sullivan testified that it was feasible to install three-cable median barriers prior to January 2000, and that such a barrier would have entrapped or redirected the tires of a car hitting it. When asked if he had an opinion to a reasonable degree of engineering certainty whether the collision in this case most probably could have been prevented, he testified, "I think it is highly likely that the crossover would have been prevented. Certainly, the vehicle would have been redirected to some extent. And although there may have been some subsequent crash, it would not have been the crash that occurred. The trajectory of the Harp vehicle would have been modified enough that it simply would not have happened as it did."

This evidence was sufficient to submit the issue to the jury, and any defects in Sullivan's testimony were matters of weight for the jury. *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 25, 609 S.E.2d 506, 509 (2005) (qualification of an expert witness and the admissibility of the expert's testimony are matters within the trial court's sound discretion); *State v. White*, 372 S.C. 364, 642 S.E.2d 607 (Ct.App.2007)(defects in the amount and quality of the expert's education or experience go to the weight to be accorded the expert's testimony and not to its admissibility). JNOV was properly denied on the issue of proximate cause.

## 2. JURY INSTRUCTION ON TAXABILITY

SCDOT next asserts the trial court committed error in refusing to instruct the jury that any award it gave would not be subject to income taxes, and that it was not to consider taxes in fixing the amount of an award. It cites for this proposition a 1952 Missouri case, *Dempsey v. Thompson*, 363 Mo. 339, 251 S.W.2d 42 (1952). *Dempsey* is not controlling here.

We find no South Carolina cases suggesting that a jury instruction on income tax consequences is appropriate. On the contrary, such a charge is prohibited by the collateral

shield itself from liability as a matter of law by merely creating an issue of fact).

source rule. *See e.g., New Found. Baptist Church v. Davis,* 257 S.C. 443, 186 S.E.2d 247 (1972); *Young v. Warr,* 252 S.C. 179, 165 S.E.2d 797 (1969) (tortfeasor has no right to any mitigation of damages because of payments or compensation received by the injured person from a source wholly independent of the wrongdoer); 11 S.C. Juris. *Damages* § 11 (1992); *see* 22 Am.Jur.2d *Damages* §§ 570–90, at 641–56 (1988) (tortfeasor cannot take advantage of payments or services rendered by a collateral source for the plaintiff's benefit, irrespective of whether the source is an insurance company, an employer, a family member, or other source). We find no basis upon which to hold such a charge warranted under S.C. law.[2]

■ The trial court committed no error in refusing the requested charge. Moreover, we find no conceivable prejudice here, in light of the size of the verdicts and the fact that the verdicts were reduced in accordance with the Tort Claims Act caps.

## PLAINTIFFS' APPEAL:

### 1. EQUAL PROTECTION

■ Plaintiffs Giannini, Golden and Bradley contend the Tort Claims Act's limitation to a $600,000 aggregate verdict violates equal protection. We disagree.

The jury awarded verdicts of $1.5 million (Giannini estate), $745,000 (Golden), and $645,000 (Bradley). The trial court reduced the verdicts to a total of $600,000 pursuant to S.C.Code Ann. § 15–78–120(2), which provides "[e]xcept as provided in Section 15–8–120(a)(4), the total sum recovered hereunder arising out of a single occurrence shall not exceed six hundred thousand dollars regardless of the number of

---

**2.** SCDOT cites a United State Supreme Court decision upholding such a charge. *Norfolk & W. Ry. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980). However, *Liepelt* involved a wrongful death action brought under Federal Employers' Liability Act in which it was held that evidence to show effect of income taxes on decedent's estimated future earnings was admissible at trial. Here, there was no evidence of potential tax liability adduced at trial, and the trial court advised SCDOT that if the jury asked about it, he would address the taxation issue.

agencies or political subdivisions or claims or actions involved."

This Court has previously addressed the individual statutory caps as set forth in S.C.Code Ann. § 15–78–120(a), which provides a limitation on damages to $300,000 because of "loss arising from a single occurrence regardless of the number of agencies or political subdivisions involved." In *Wright v. Colleton County*, 301 S.C. 282, 291–292, 391 S.E.2d 564, 570 (1990), we upheld the $300,000 cap against an equal protection challenge, stating:

the limitation bears a reasonable relationship to the legislative objectives as expressed in Section 15–78–20(a) of relieving the government from hardships of unlimited and unqualified liability and preserving the finite assets of governmental entities which are needed for an effective and efficient government. The limitations set forth in the statute rest on a reasonable basis and are not arbitrary in that the legislature has balanced the needs for services and demand for reasonable taxes against the fair reimbursement of injured tort victims. Finally, we find that the damage limitation provisions apply to similar plaintiffs in a similar manner.

We concluded in *Wright* that there was no equal protection violation because the same monetary cap applies equally to the entire class of plaintiffs. *Id.*

Plaintiffs assert the class here, tort victims injured by the state, are not treated the same under the statute, because the dollar amount may vary and be limited by the amount of persons injured in an occurrence. We disagree. We find the limitation accords with the stated legislative purpose of preserving finite governmental assets, and treats similar plaintiffs in a similar manner.

As we noted in *Foster v. SC Dep't of Transp.*, 306 S.C. 519, 413 S.E.2d 31 (1992), the fact that a classification results in some inequity does not render it in violation of the Constitution. In *Foster*, we upheld higher liability limits for physicians and dentists against an equal protection challenge.

We find the Legislature's aggregate limitation on liability is supported by a rational basis such that there is no equal protection violation. *Accord Wilson v. Gipson*, 753 P.2d 1349

(Ok.1988) (several children injured and five killed in explosion of water heater at a public school; court upheld aggregate limitation of $300,000 liability against equal protection challenge, awarding $18,221 to parents of children killed, and remainder to injured children); *Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo.1986) (legislative decision to limit the public entity's liability to $150,000 for any injury to one person and $400,000 for any injury to two or more persons in a single occurrence withstood equal protection).

## 2. ONE SUBJECT/BOBTAILING

■ Giannini, Bradley and Golden next assert the Legislature's re-enactment of the statutory tort claims caps in 1994 and 1997 violate S.C. Const., Art. III § 17 by "logrolling" or "bobtailing" provisions into an appropriations act. We disagree.

S.C. CONST. Art. III, § 17 requires that "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."

■ As recently noted by this Court:
The purpose of Article III, § 17 is (1) to apprise the members of the General Assembly of the contents of an act by reading the title, (2) prevent legislative log-rolling and (3) inform the people of the state of the matters with which the General Assembly concerns itself. . . . Article III, § 17 is to be liberally construed so as to uphold an Act if practicable. Doubtful or close cases are to be resolved in favor of upholding an Act's validity. Article III, § 17 does not preclude the legislature from dealing with several branches of one general subject in a single act. It is complied with if the title of an act expresses a general subject and the body provides the means to facilitate accomplishment of the general purpose. However, Article III, section 17 requires 'the topics in the body of the act [be] kindred in nature and hav[e] a legitimate and natural association with the subject of the title,' and that the title conveys 'reasonable notice of the subject matter to the legislature and the public.'

*Sloan v. Wilkins,* 362 S.C. 430, 608 S.E.2d 579 (2005) (emphasis supplied, internal citations omitted). Plaintiffs assert the

reenactments violate the one-subject rule as they do not inherently relate to the raising and spending of tax monies.

We recognized in *Town of Hilton Head v. Morris,* 324 S.C. 30, 484 S.E.2d 104, 107 (1997) that "a measure enacted as part of a general appropriations act does not violate Article III, § 17, if it reasonably and inherently relates to the raising and spending of tax monies." *See also Keyserling v. Beasley,* 322 S.C. 83, 470 S.E.2d 100 (1996) (provisions of appropriations act which created negotiating committee to establish new regional radioactive waste disposal compact and which repealed statute adopting prior compact were related to raising and spending of revenues and, thus, complied with one-subject rule); *Hercules v. South Carolina Tax Comm'n,* 274 S.C. 137, 262 S.E.2d 45 (1980) (statute providing for suspension of the statute of limitations on tax assessment if a corporate taxpayer fails to give the Tax Commission notice of an IRS examination was germane to the General Appropriations Act in which it was contained and thus did not violate the constitutional requirement that every act relate to but one subject).

Here, 1994 Act No. 497, lists in its title that the act is "TO PROVIDE THAT CERTAIN PROVISIONS OF SECTIONS 15–78–100 AND 15–78–120 OF THE 1976 CODE ARE REENACTED AND MADE RETROACTIVE TO APRIL 5, 1988." Further, Part 2, § 107 of the Appropriations Act amends the Uniform Contribution Among Joint Tortfeasors Act to make it inapplicable to government agencies, and reinstates the Tort Claims Caps set forth in § 15–78–120(a)(1). The 1997 Appropriations Act, 1997 Act No. 155, Part II, § 55, similarly reenacts the $500,000 cap set forth in § 15–78–120(a)(2). The statutory reenactments reasonably and inherently relate to the raising and spending of tax monies. *Town of Hilton Head v. Morris.* Accordingly, reenactment of the caps does not violate Article III, § 17.

**GIANNINI'S APPEAL:**

### 1. APPORTIONMENT OF VERDICT

Finally, Giannini asserts the trial court erred in apportioning the verdict equally among the Plaintiffs, rather than apportioning it in accordance with the verdicts awarded to each plaintiff.

As noted, S.C.Code Ann. § 15–78–120(a)(1) limits an individual's recovery against a government agency to $300,000 for a loss arising from a single occurrence. Section 15–78–120(a)(2) further limits the total sum recoverable from a single occurrence to $600,000 regardless of the number of agencies or political subdivisions or claims or actions involved. The trial court determined that, since each of the verdicts exceeded $300,000, each plaintiff's verdict would each be reduced to $200,000.

We find no error in the trial court's apportionment. If the Legislature had intended for the $600,000 aggregate cap to be divided in proportion to the verdicts awarded to each plaintiff, it could have said so. *State v. Curtis*, 356 S.C. 622, 591 S.E.2d 600 (2004) (if Legislature had intended certain result in a statute it would have said so). Accordingly, the trial court's ruling is affirmed.

**AFFIRMED.**

MOORE, J., concurs. BEATTY, J., concurring in a separate opinion. PLEICONES, J. dissenting in a separate opinion in which TOAL, C.J., concurs.

Justice BEATTY:

I concur in the majority opinion; however, I write separately to address the discretionary immunity issue.[3]

In my view, discretionary immunity viability is equal to that of design immunity, neither is perpetual. *See Wooten ex rel. Wooten v. S.C. Dep't of Transp.*, 333 S.C. 464, 467–68, 511 S.E.2d 355, 357 (1999) (affirming as modified the Court of Appeals' holding that "design immunity is not perpetual. Once the Department of Transportation had notice of a hazardous condition, it was no longer immune from liability").

Section 15–78–60(15) affords SCDOT discretionary immunity in the failure to *initially* place median barriers. This section provides, in pertinent part, that the governmental entity is not liable for a loss resulting from:

---

3.  SCDOT moved for a directed verdict and JNOV on the ground that it was entitled to design immunity and for discretionary immunity under section 15–78–60(15).

**(15) absence, condition, or malfunction of any sign, signal, warning device, illumination device, guardrail, or median barrier unless the absence, condition, or malfunction is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice.** Governmental entities are not liable for the removal or destruction of signs, signals, warning devices, guardrails, or median barriers by third parties except on failure of the political subdivision to correct them within a reasonable time after actual or constructive notice. **Nothing in this item gives rise to liability arising from a failure of** any governmental entity to **initially place any of** the above signs, signals, warning devices, guardrails, or **median barriers when the failure is the result of a discretionary act of the governmental entity.**

S.C.Code Ann. § 15–78–60(15) (2005)(emphasis added).

"Discretionary immunity is contingent on proof the government entity, faced with alternatives, actually weighed competing considerations and made a conscious choice using accepted professional standards." *Wooten ex rel. Wooten v. S.C. Dep't of Transp.*, 333 S.C. 464, 468, 511 S.E.2d 355, 357 (1999).

The finite viability of discretionary immunity is evident in the statute itself. The statute uses the temporal word *initially* indicating that the immunity for the failure to initially place median barriers terminates after notice of a hazardous condition. In other words, SCDOT gets a free pass on the initial claim for damages occurring before SCDOT receives notice of a hazardous condition if it actually exercised discretion in failing to initially place median barriers. After notice, SCDOT is required to remedy the hazardous condition within a reasonable time.

I agree with the dissent that the exercise of discretion includes the right to be wrong but the right to be wrong is not perpetual. The SCDOT exercised discretion not to place median barriers when I–77 was constructed and opened to traffic.[4] SCDOT is entitled to immunity for that decision because it related to the *initial* placement of median barriers. Subsequent to the initial decision, SCDOT received notice of cross-over accidents and the existence of hazardous conditions.

---

4. SCDOT was entitled to both design and discretionary immunity at that time.

Once SCDOT was put on notice, the first sentence in section 15–78–60(15) required SCDOT to correct the condition within a reasonable time. *See Steinke v. S.C. Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 396, 520 S.E.2d 142, 154 (1999) ("While provisions establishing limitations upon and exemptions from liability of a governmental entity must be liberally construed to limit liability, we also must presume in construing a statute that the Legislature did not intend to perform a futile thing.").

Section 15–78–60(15) does not grant discretionary immunity every time SCDOT attempts to correct a hazardous condition.

In the instant case, it was up to the jury to determine if SCDOT corrected the hazardous condition within a reasonable time as required by section 15–78–60(15).

I would affirm the trial court.

Justice PLEICONES:

I respectfully dissent. In my opinion, the trial court should have granted SCDOT's motion for directed verdict, and I would not address the other issues raised by the parties.[5]

I am troubled by the majority's analysis of the Tort Claims Act's immunity provisions applicable to SCDOT. First, the majority fails to adequately address SCDOT's claim that it did not owe plaintiffs a duty to install median barriers. The majority instead jumps ahead to the immunity issue under the Tort Claims Act. While it is clear that SCDOT has a duty to plan, construct, maintain, and operate the state's highways,[6] I

---

**5.** While there would be no need to address the remaining issues should we find SCDOT should have been granted a directed verdict, I note that I agree with the majority's conclusions on the remaining questions except for the verdict apportionment. I would hold that the trial court erred by not apportioning the $600,000 statutory cap in proportion to the actual verdicts returned by the jury. Additionally, I believe the enrolled bill rule clearly disposes plaintiffs' bobtailing claim. *Med. Socy. of S.C. v. Med. U. of S.C.,* 334 S.C. 270, 278, 513 S.E.2d 352, 356 (1999) (enrolled bill rule provides that an act ratified by the General Assembly, approved by the Governor, and enrolled in the office of the Secretary of State is conclusively presumed to have been properly passed and is not subject to impeachment by evidence outside the act to show it was not passed in compliance with law).

**6.** S.C.Code Ann. § 57–1–30 (Supp.2006); *Brashier v. S.C. Dept. of Transp.,* 327 S.C. 179, 191, 490 S.E.2d 8, 14 (1997), *overruled in part on*

believe the majority opinion improperly implies that a duty may arise simply because an exception to the State's waiver of sovereign immunity does not exist in the Tort Claims Act. *Cf. Arthurs ex rel. Est. of Munn v. Aiken County*, 346 S.C. 97, 105, 551 S.E.2d 579, 583 (2001) (existence of a duty, as well as other elements of negligence, must be shown before reaching immunities issue under the Tort Claims Act).

Perhaps more disconcerting is the majority opinion's lack of any discussion of discretionary immunity. Discretionary immunity is different from design immunity, and SCDOT argues it is entitled to both. Design immunity gives SCDOT absolute immunity for liability arising from the design of highways and public ways. *Wooten ex rel. Wooten v. S.C. Dept. of Transp.*, 333 S.C. 464, 511 S.E.2d 355 (1999); S.C.Code Ann. § 15–78–60(15). However, design immunity is not perpetual, and once the governmental entity receives notice of a hazardous condition, it may no longer invoke design immunity as an absolute shield for liability. *Id.*[7] Although an entity may lose design immunity, it may still be immune from liability if it exercises discretion when faced with actual or constructive knowledge of a hazardous condition.

In *Wooten*, this Court explicitly stated that the design immunity provision of § 15–78–60(15) did not control that case; the more specific clause providing discretionary immunity for the initial placement of traffic signals was the applicable immunity provision. Likewise, in this case, the pertinent portion of § 15–78–60(15) is the part that specifically provides discretionary immunity for the initial placement of cable median barriers. The majority appears to acknowledge this correlation, but unlike in *Wooten*, it does not analyze whether SCDOT's actions after it received notice of the dangerous

---

*other grounds, I'On v. Town of Mt. Pleasant*, 338 S.C. 406, 526 S.E.2d 716 (2000).

7. *But cf. Summer v. Carpenter*, 328 S.C. 36, 43, 492 S.E.2d 55, 59 (1997) (holding "[e]ven if the Highway Department was on notice the design of the intersection was dangerous, the Highway Department was immune from suit for negligent design."). *Summer* can be distinguished by the fact that the injury in *Summer* occurred while the intersection was still under construction, thus preserving design immunity.

condition entitle SCDOT to discretionary immunity. I would hold that SCDOT is entitled to discretionary immunity.

Discretionary immunity is contingent on proof the government entity, faced with alternatives, actually weighed competing considerations and made a conscious choice. Further, the entity must establish, in weighing the competing considerations and alternatives, it utilized accepted professional standards appropriate to resolve the issue. *Strange v. S.C. Dept. of Hwys. & Pub. Transp.*, 314 S.C. 427, 429, 445 S.E.2d 439, 440 (1994). The governmental entity bears the burden of establishing discretionary immunity as an affirmative defense. *Niver v. S.C. Dept. of Hwys. & Pub. Transp.*, 302 S.C. 461, 463, 395 S.E.2d 728, 730 (Ct.App.1990). The provisions of the Tort Claims Act that establish limitations on and exemptions to the liability of the State must be liberally construed in favor of limiting the liability of the State. S.C.Code Ann. § 15–78–20(f) (Supp.2005).

There is no question that SCDOT weighed competing economic and environmental considerations, in addition to following accepted professional standards promulgated by the federal government and the American Association of State Highway and Transportation Officials (AASHTO), when it decided not to place median barriers on I–77 when it opened in 1995. After SCDOT received notice in 1997 of several median crossover accidents in the vicinity of the accident in this case, SCDOT added diagonal yellow lines with raised reflectors to the highway shoulders that bordered the median. This was done to reduce crossover accidents by decreasing the possibility that motorists would drift into the median.

Even though the placement of these raised markers significantly decreased the number of accidents within a one-mile radius [8] of this accident site, SCDOT began gathering information in 1999 concerning median widths, accident history, average daily traffic, etc., in order to prioritize and secure funding for installation of median barriers. This project was underway when this accident occurred in January 2000, and the first

---

8. Given the specific locations involved in tracking highway accidents, it is important to note that SCDOT had tracked the accident reports for I–77, and between 1995 and 1999, no median cross-over accidents occurred within 1,500 feet of the site where this accident occurred.

median cable barriers were installed by December 2000. The record clearly shows that SCDOT constantly weighed its options in an attempt to minimize the possibility of crossover accidents on this stretch of I-77. Simply because there was disagreement between each side's experts as to whether discretion was *properly* exercised does not preclude discretionary immunity for SCDOT. In other words, the exercise of discretion includes the right to be wrong. *McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985), *superseded by statute as recognized in Murphy v. Richland Mem. Hosp.,* 317 S.C. 560, 455 S.E.2d 688 (1995).

In my opinion, SCDOT was entitled to discretionary immunity because it is undisputed that it exercised discretion in maintaining the area of I-77 where this accident occurred. SCDOT contemplated its alternatives pursuant to the relevant AASHTO regulations and federal standards, and it made a conscious effort to keep this interstate as safe as possible in light of its options. Accordingly, I would reverse.

TOAL, C.J., concurs.