728 S.E.2d 52

**Alberta MAJOR, Appellant,**

**v.**

**CITY OF HARTSVILLE, Respondent.**

**No. 4979.**

Court of Appeals of South Carolina.

Heard March 12, 2012.

Decided June 6, 2012.

Rehearing Denied July 17, 2012.

258

Michael T. Miller, Wukela Law Firm, of Florence, for Appellant.

William Bailey Woods, Woods Law Firm, LLC, of Lexington, for Respondent.

FEW, C.J.

This appeal involves constructive notice under subsection 15–78–60(15) of the South Carolina Code (2005), a provision of the Tort Claims Act. The question before the court is "constructive notice of what?" More precisely stated, the issue we address is: What is the "defect or condition" of which a plaintiff must prove a governmental entity had constructive notice before the entity is subject to liability "for loss arising out of a defect or a condition in [or] on ... a highway, road, street, ... or other public way caused by a third party?" § 15–78–60(15). Alberta Major presented evidence the City of Hartsville had notice of circumstances it knew would eventually lead to a dangerous defect or condition, but she presented no evidence the City had any notice of the defect or condition she alleged proximately caused her injury. We affirm the circuit court's decision to grant summary judgment to the City.

## I. Facts and Procedural History

Major attended night classes at Coker College in Hartsville, South Carolina. On the afternoon of her injury, December 1, 2008, Major parked in a lot across the street from the Student Union Building, where she was going to check her mailbox before class. To reach the building, Major walked on a sidewalk that turned into a grassy area before she crossed the street at a corner. The City owns the sidewalk and grassy area. As Major walked over the grassy area to get to the

street, her foot "slipped into a hole." She did not fall but "stumbled" and "hobbled on across the street." Five days later, Major went to the emergency room for ankle pain. She later saw an orthopedist and attended physical therapy for her ankle.

In July 2009, Major filed this action for damages against the City. The City filed a motion for summary judgment asserting it was not liable under the Tort Claims Act because it was not on notice of any hole. The circuit court conducted a hearing, agreed with the City's position, and granted the motion.

## II. Summary Judgment Standard

Summary judgment is proper when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Robinson v. Estate of Harris*, 388 S.C. 630, 638, 698 S.E.2d 222, 226 (2010) (internal quotation marks omitted). "On appeal from the grant of a summary judgment motion, [we apply] the same standard as that required for the circuit court." 388 S.C. at 637, 698 S.E.2d at 226.

## III. "Defect or Condition" Under the Tort Claims Act

Major argues the City is liable for her injuries under subsection 15–78–60(15) of the Tort Claims Act, which provides in part:

> Governmental entities responsible for maintaining highways, roads, streets, causeways, bridges, or other public ways are not liable for loss arising out of a defect or a condition in, on, under, or overhanging a highway, road, street, causeway, bridge, or other public way caused by a third party unless the defect or condition is not corrected by the particular governmental entity responsible for the maintenance within a reasonable time after actual or constructive notice.

S.C.Code Ann. § 15–78–60(15) (2005). The parties agree there is no evidence of actual notice. Major argues the City was on constructive notice of "the condition at issue," which

she defines as "the unpaved corner of the intersection that was frequently subject to vehicles driving over it creating ruts." Her argument is based primarily on the testimony of the City Director of Parks and Leisure Services, Phillip Gardner. Gardner testified that "for years" he observed trucks cutting the corner where Major fell and that the truck tires crossing unpaved ground caused "depressions." Gardner stated when his crew noticed a depression, "they've gone back and they have put sand or clay back in the area." However, he called it "a fruitless effort because a few days later, it's . . . right back in the same condition." He testified that because of this, "they just kept an eye on that area to make sure that it did not create . . . some sort of a . . . problem at a later time."

Major also presented the testimony of Hartsville police officer Michael Sanchez,[1] who responded to the scene of Major's fall when she reported it to the City three days later. Officer Sanchez testified he observed "a little bit of a concave depression in the dirt" at the corner. When Major's counsel asked him what "thoughts" he had on "how the depression was created," Sanchez testified it could have been caused by "vehicles cross[ing] over sidewalks and corners." Sanchez explained he had seen vehicles do that at the intersection where Major fell, and "we find this happening throughout the City a lot where people cut corners and it could have been something generated from just constant wear and tear. I know I've observed many a vehicle travel through a corner like that and go over it."

The circuit court found that the allegation the City was on notice of an "unpaved corner of the intersection that was frequently subject to vehicles driving over it creating ruts" does not create a "genuine issue as to any material fact" under subsection 15–78–60(15). The court stated:

> [T]he alleged defect in this case involved nothing more than the periodic placement and correction of tire tracks on grass at a City of Hartsville street corner. The Court disagrees with the Plaintiff's assertion that the Defendant's knowledge

---

1. Gardner and Sanchez are the only City employees whose testimony is in the record. We have not considered the testimony of any other witnesses because their knowledge cannot be imputed to the City.

of the periodic cutting of street corners was a continuous condition and finds that this did not place the Defendant on constructive notice of the actual defect, rut or depression in which the Plaintiff injured herself.

We agree with the circuit court. To prove liability under subsection 15–78–60(15), a plaintiff must prove the governmental entity was on notice of that which she alleges was the proximate cause of her injury. Here, Major alleges the proximate cause was the depression, rut, or hole. However, viewing the evidence in the light most favorable to Major, she has shown only that the City was aware of the circumstances which were likely, even certain, to cause a hole. As we will discuss later, this argument misses the significance of what a plaintiff alleges was the proximate cause of her injury.

Major argues the repetitive nature of trucks driving off the roadway at the corner and causing depressions, ruts, or holes establishes a continual condition, and therefore the City was on constructive notice that the specific condition or defect that caused Major's fall would likely develop. In support of her argument, Major cites *Fickling v. City of Charleston*, 372 S.C. 597, 643 S.E.2d 110 (Ct.App.2007). *Fickling* is factually similar to Major's case because it involved a plaintiff who "stepped into a hole in a sidewalk and fell, sustaining injuries." 372 S.C. at 599, 643 S.E.2d at 112. However, *Fickling* does not support Major's argument because in that case we found evidence that the City of Charleston was on constructive notice of the specific "defect or condition" the plaintiff alleged caused her injuries—"a hole in a sidewalk." We stated: "In the light most favorable to Fickling, there was at least some evidence that (1) there were numerous City personnel within the area of the defect who could have seen and reported the problem; [and] (2) the condition had existed for a while." 372 S.C. at 609–10, 643 S.E.2d at 117. Specifically, we cited evidence "the hole was partially covered by leaves," 372 S.C. at 601, 643 S.E.2d at 113, a photograph showing "[l]arge cracks radiated out from [the hole]," *id.*, and the testimony of Charleston's Public Service Director that the hole "had probably been that way for a while." 372 S.C. at 610 n. 34, 643 S.E.2d at 117 n. 34. *Fickling*, therefore, was decided on the basis of the existence of evidence that the "condition or defect" that caused the plaintiff's injury—the hole in the sidewalk—

had existed long enough that City of Charleston personnel should have seen it and fixed it.

In this case, on the other hand, Major offered no evidence the City was on notice of the particular depression, rut, or hole she alleges caused her injury. Gardner testified his crew typically inspected a particular intersection every three to five weeks. Gardner did not know if any of his staff was present at the corner in the week before Major fell. He testified the City's records indicated that because Major fell on the Monday after Thanksgiving, "the last time we would have or could have been there would be Wednesday before Thanksgiving." Major's counsel conceded at oral argument that "we don't know" how long "the particular depression that caused Mrs. Major's injuries" had been there, and that it could have been created that morning. Because there was no evidentiary basis on which the jury could determine how long a depression, rut, or hole had been there, a jury would have to speculate whether City personnel should have seen it. In this situation, there was no evidence of constructive notice and summary judgment was required. *See Hanahan v. Simpson,* 326 S.C. 140, 149, 485 S.E.2d 903, 908 (1997) (stating "verdicts may not be permitted to rest upon surmise, conjecture or speculation").

Major's argument that *Fickling* is applicable to this case appears to be based on a reference this court made at the end of a footnote to the supreme court's discussion of two cases in *Wintersteen v. Food Lion, Inc.,* 344 S.C. 32, 542 S.E.2d 728 (2001). *See Fickling,* 372 S.C. at 610 n. 37, 643 S.E.2d at 117 n. 37. In *Wintersteen,* refuting an argument that our courts "have ... required storekeepers to take actions to prevent or minimize the foreseeable risk of a foreign substance on the floor of its premises," the supreme court explained its holding in *Henderson v. St. Francis Community Hospital,* 303 S.C. 177, 399 S.E.2d 767 (1990) and this court's holding in *Pinckney v. Winn–Dixie Stores, Inc.,* 311 S.C. 1, 426 S.E.2d 327 (Ct. App.1992). 344 S.C. at 36, 36 n. 1, 542 S.E.2d at 730, 730 n. 1. The court explained that "recurrence alone is insufficient to establish constructive notice." 344 S.C. at 37 n. 1, 542 S.E.2d at 730 n. 1. The court went on to explain that

there may be certain factual patterns, as in *Henderson* and *Pinckney,* wherein the recurrence is of such a nature as to amount to a continual condition, and that factor, when

coupled with other evidence, such as store employees' knowledge thereof, may be sufficient to create a jury issue as to the defendant's constructive notice at the time of the accident.

*Id.*

For several reasons, this case does not fit the "factual patterns" of *Henderson* and *Pinckney*. First, those cases did not arise as exceptions to sovereign immunity under the Tort Claims Act. Second, in both of those cases the defendant's negligence created the circumstance which led to the recurrence of a dangerous condition that "amount[ed] to a continual condition." In *Henderson*, St. Francis Hospital ignored the advice of an architectural firm it hired to design an addition to its parking lot that it should remove numerous mature sweet-gum trees because the balls they drop on the parking lot "are dangerous to pedestrians." 303 S.C. at 180, 399 S.E.2d at 768–69. Despite this advice, St. Francis "built a stairway immediately adjacent to one of the trees" and "failed to use a regular maintenance program." 303 S.C. at 180, 399 S.E.2d at 769. In *Pinckney*, the store manager "created a dangerous situation" by putting a "poinsettia display ... on a make-shift shelf adjacent to the aisles in the store." 311 S.C. at 4, 426 S.E.2d at 329. The plaintiff presented evidence that a poinsettia leaf "secretes a 'milky substance'" when it is removed from the plant, and that "the store manager observed the poinsettia leaves falling to the floor and ... left [them] ... until the next periodic sweeping." *Id.*

Finally, as the supreme court stated in *Wintersteen*, the "continual condition" must be "coupled with other evidence." 344 S.C. at 36 n. 1, 542 S.E.2d at 730 n. 1. We do not see any "other evidence" in this record which could create a jury question on the City's liability under subsection 15–78–60(15) even if this were a "factual pattern" like *Henderson* or *Pinckney*.

Our holding is further supported by *Wintersteen*. In *Wintersteen*, the plaintiff "slipped and fell on a puddle of clear liquid" while walking near "a self-service soda fountain equipped with an ice dispenser" in a Food Lion store. 344 S.C. at 34, 542 S.E.2d at 729. Wintersteen admitted Food Lion had neither actual nor constructive notice of the liquid on

the floor but instead argued "the storekeeper has a duty to minimize such risks and take measures to prevent the items from falling" because it is foreseeable that the ice dispenser will cause liquid to fall to the floor. 344 S.C. at 35, 542 S.E.2d at 730. Affirming this court's decision that the trial court should have directed a verdict for Food Lion, the supreme court distinguished between liability for failure to correct an existing dangerous condition and liability for failure to prevent the dangerous condition from arising in the first place.

Wintersteen does not dispute the trial court's ruling that Food Lion neither placed the substance on the floor nor had actual or constructive notice thereof. Rather, she contends that, if it is foreseeable an item will fall to the floor, then the storekeeper has a duty to minimize such risks and take measures to prevent the items from falling. Although this approach has some appeal, we decline to depart from our traditional "foreign substance" analysis. We adhere to prior precedent that a storekeeper is liable only upon a showing that it actually placed the foreign substance on the floor, *or that it had actual or constructive notice thereof.*

344 S.C. at 35–36, 542 S.E.2d at 730.

A similar distinction exists for liability of governmental entities under the Tort Claims Act. When a plaintiff seeks to recover for the failure to correct some existing "defect or condition," the plaintiff must prove the governmental entity had actual or constructive notice of the defect or condition alleged to have proximately caused the plaintiff's injury. *See* S.C.Code Ann. § 15–78–60(10) (2005) (requiring proof of actual or constructive notice for "loss resulting from ... natural conditions on unimproved property"); § 15–78–60(15) (requiring the same for "loss resulting from ... a defect or condition ..." caused by a third party); § 15–78–60(16) (2005) (requiring the same for "loss resulting from ... public property, intended or permitted to be used as a park, playground, or open area for recreational purposes").

However, the Tort Claims Act contains different standards for liability when a plaintiff seeks to recover for the governmental entity's failure to prevent a dangerous condition from arising. For example, the Act provides immunity from liability in design defect cases. *See* S.C.Code Ann. § 15–78–60(15)

("Governmental entities are not liable for the design of highways and other public ways."). Even though absolute design immunity is not available in all cases, the City's actions might have been subject to discretionary design immunity. *Compare Giannini v. S.C. Dep't of Transp.*, 378 S.C. 573, 580, 664 S.E.2d 450, 453 (2008) (holding absolute design immunity was not available when SCDOT was on notice of the need for median barriers) *and Wooten v. S.C. Dep't of Transp.*, 333 S.C. 464, 467–68, 511 S.E.2d 355, 357 (1999) (holding absolute design immunity was not available when SCDOT was on notice an intersection was hazardous because existing traffic signals did not allow safe pedestrian crossing) *with Wooten*, 333 S.C. at 469, 511 S.E.2d at 358 (holding discretionary immunity was a jury issue on a claim that SCDOT failed to redesign an intersection with traffic signals that allowed safe pedestrian crossing "after notice the intersection was hazardous") *and Giannini*, 378 S.C. at 590, 664 S.E.2d at 459 (Pleicones, J., dissenting) (stating "[a]lthough an entity may lose design immunity, it may still be immune from liability if it exercises discretion when faced with actual or constructive knowledge of a hazardous condition").

The distinction in *Wintersteen* and the Tort Claims Act turns on the plaintiff's allegation of proximate cause. In *Wintersteen*, the plaintiff alleged the proximate cause of her injury was Food Lion's failure to "take measures to prevent the items from falling" to the floor. 344 S.C. at 35, 542 S.E.2d at 730. The supreme court "decline[d] to depart from our traditional 'foreign substance' analysis ... [and] adhere[d] to prior precedent that a storekeeper is liable only upon a showing ... that it had actual or constructive notice" of the "substance on the floor." 344 S.C. at 35–36, 542 S.E.2d at 730. It is not enough, therefore, to prove the storekeeper knew the substance would eventually be on the floor and failed to take steps to prevent it. Similarly, when a plaintiff alleges a governmental entity is "liable for loss arising out of a defect or a condition ... caused by a third party" under subsection 15–78–60(15), she must offer evidence that the governmental entity had notice of the defect or condition she alleges was the proximate cause of her injury. Major's argument that the City was on notice of trucks cutting the corner to create holes misses the distinction. Just as in *Wintersteen*, it is not

enough to allege the governmental entity knew the defect or condition would eventually develop and then cause injury. This would not be an allegation that the City should have fixed the hole, but a design defect allegation that the City should have taken steps to fix the intersection where trucks cause holes. However, her complaint contains no allegation the City failed to take any step to prevent a depression, rut, or hole from developing, and, at oral argument, her counsel conceded she did not raise a design defect claim.

The dissent argues that we have applied an actual notice standard when only constructive notice is required. Our focus, however, is not the difference between actual and constructive notice. The question we address is "constructive notice of what?" The answer is that the plaintiff must prove the governmental entity was on constructive notice of the defect or condition she alleges proximately caused her injury. Major alleges the proximate cause of her injury was a hole but presented no evidence the City was on constructive notice of a hole.

### IV. Conclusion

We affirm the circuit court's decision to grant summary judgment in the City's favor because we find no evidence the City was on constructive notice of the defect or condition Major alleges proximately caused her injury.

CURETON, A.J., concurs.

HUFF, J., dissents.

HUFF, J.

Respectfully, I dissent. Alberta Major brought this tort action against the City of Hartsville (City), alleging she was injured when she fell in a "hole" on City's premises. The trial court granted City summary judgment, finding City was not on notice of any defect, rut, or depression at the location of the incident. In my opinion, the majority, as well as the trial court, has effectively applied an actual notice standard to this matter, where the issue is one of constructive notice. Viewing the evidence in a light most favorable to Major, I believe she has presented sufficient evidence City had constructive notice

of a defect or condition, alleged to have caused her injury, such that the granting of summary judgment to City on the basis that City had no notice was improper.

The facts are as follows: On Monday, December 1, 2008, Major, a resident of Florence, traveled to Hartsville to attend class at Coker College. Major parked her car in a school parking lot, and then proceeded to a sidewalk, walking her usual route to class. This particular sidewalk was paved to a point, but as it reached a corner where two roads intersected, the sidewalk ran out, leaving a grassy area between the sidewalk and the road. Major, intending to cross the street, stopped beside the stop sign on this corner to check for traffic. According to Major, as she "took a step out," her foot slipped into a hole, her knee buckled to the right, and she stumbled, but regained her balance. When she returned for class the following Thursday, December 4, Major reported she had injured her foot in the incident to a Coker College employee at the Student Building. The employee instructed her to report the matter to Coker College security. Major located security officer Burke Hoffman and pointed out the place where she indicated she had stepped into a hole. Hoffman informed Major the property did not belong to Coker College, and told her she needed to contact City's police department. Major then called the police, and Officer Michael Sanchez responded to the incident location. Major informed Officer Sanchez she had hurt herself on December 1 when, as she was about to cross the street, she stepped into a deep hole in the grass at the corner of the intersection. Major returned to the location the next day to take photographs of the area, and found an individual with a golf cart who was putting dirt in the area. Major stated she sought medical treatment at the emergency room on December 6, 2008, and was thereafter seen by an orthopedist and ultimately referred to physical therapy for injury to her right ankle.

The Coker College security officer described the grassy area incident site Major showed to him as being located between the sidewalk and the road and as being "like a rut," with leaves partially covering it. When asked if he had any idea what may have caused the rut or hole, Hoffman responded:

I do know from observations from over the years, that cars, they come—and not only when I'm in the parking lot, but when I'm on campus looking back towards that way, that cars come and cut that corner. And cut it, you know, a lot of times it—they just roll, and don't come to a complete stop. And then, you know, they go on.

Hoffman indicated the cars "cut real sharp" and drive on the grass. Hoffman also acknowledged he had seen large 18–wheeler trucks cut that corner because it is difficult for them to make a right turn there due to a median. The area of the incident has since been paved, and Hoffman indicated he had seen vehicles cutting that corner since then and noted tire tracks could be observed on the cement. Coker College employee Gokey described the area in question as an "impression" with grass growing over it, two to three inches on a slope, about two feet long and one foot wide.

Officer Sanchez described the corner incident area as being about a foot away from the sidewalk and appearing "to be some kind of a relief, a concave depression ... in the dirt with grass growing in it and very sparse leaf coverage." He testified the depression was oval shaped, about eight to twelve inches long, six inches wide, and an inch to an inch and a half in depth. When asked if he had any thoughts on how the hole or depression was created, Officer Sanchez indicated it could have been caused by "constant wear and tear" from traffic, as he has observed vehicles cutting that corner as they turned, driving up on the grass.

Phillip Gardner, the Director of Parks and Leisure Services for City testified that Public Works was in charge of the sidewalk, but his department was in charge of the grassy strip between the sidewalk and road. Gardner was not informed of the incident until around the time Major filed her lawsuit in July, 2009. His department then went out to look at the area, and found that trucks and cars appeared to be cutting the corner short, leaving tire marks. Gardner stated right rear wheels were going across the curb to try to make the turn because it is a tight turn. Sometime after his department observed the area, the Public Works Department continued the sidewalk down to the street, paving the corner of land. Gardner acknowledged they had "observed vehicles making that turn for years," that trucks in particular had difficulty

with it and would often drive up on the grass, and it had caused depressions before. When asked how his department had addressed the issue in the past, Gardner stated:

> They've gone back and they have put sand or clay back in the area, but it was—it was a fruitless effort because a few days later, it's, you know, right back in the same condition so after two or three attempts, they just keep an eye on that area to make sure that it did not create, you know, some sort of a, you know problem at a later time.

Gardner further noted that tire tracks were currently on the paved portion, and if trucks continued to drive over the area, the concrete would eventually crumble. According to Gardner, his department worked in this area once every three to five weeks, and if his "crew had noticed that a tractor-trailer had cut that corner and left a deep grove or rut there," they would have then "gone in and back-filled it and tamped it tight and observed the area to make sure that it was packed well and did not wash out or settle."

City moved for summary judgment, asserting there was no evidence it had actual or constructive notice of any rut, hole, or defect in the property, arguing there was no evidence anyone with City was on notice of any problem at the location in the days, weeks and months prior to the incident. The trial court granted City's motion, finding City was not on notice, constructive or otherwise, of any defect, rut or depression at the location of the alleged incident. In making its ruling, the court noted that deposition testimony showed neither City nor Coker College were aware of any prior falls or injuries at the location; Major herself was unable to cite any prior experience or observation of any defect, rut, or depression in the area despite her frequent use of that street corner; there was no testimony from anyone that showed any notice, constructive or otherwise, of any specific rut or depression at the location in the days, weeks, or months prior to Major's accident; and, based on the deposition testimony of Gardner, City had corrected depressions in the past by filling and tamping the area affected such that City actively maintained its streets and street corners. The court specifically disagreed with Major's assertion that City's knowledge of the periodic cutting of street corners was a continuous condition, and found such

did not place City on constructive notice of the alleged defect, rut, or depression.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. Appellate courts apply the same standard applied by the trial court pursuant to Rule 56(c), SCRCP, when reviewing a grant of summary judgment. *Turner v. Milliman*, 392 S.C. 116, 121–22, 708 S.E.2d 766, 769 (2011). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Id.* at 122, 708 S.E.2d at 769. When the burden of proof is by a preponderance of the evidence, a non-moving party need only present a scintilla of evidence to withstand a motion for summary judgment. *Hancock v. Mid–South Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009). "Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is dispute as to the conclusion to be drawn from those facts." *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 378, 534 S.E.2d 688, 692 (2000). Additionally, because summary judgment is a drastic remedy, it should be cautiously invoked to ensure a litigant is not improperly deprived of a trial on disputed factual issues. *Madison v. Babcock Center, Inc.*, 371 S.C. 123, 134, 638 S.E.2d 650, 655 (2006).

Major contends the only issue on appeal is whether City had adequate notice of the condition that caused her injuries. She concedes City did not have actual notice of the depression at the time of the incident. However, she notes that both parties acknowledge a constructive notice standard applies in this situation, and asserts the trial court erred in holding City did not have constructive notice of the condition that caused her injuries. Major points to the deposition testimony showing, whether the area was described as a depression, rut, or impression, City had knowledge that the condition was likely created by vehicles driving over the grass at that corner. Major further notes that the deposition testimony of Gardner shows his department had an established procedure for deal-

ing with ruts and depressions caused by vehicles driving on the grass while turning at that particular corner. She argues the deposition testimony, showing City's common knowledge of the practice of vehicles cutting the corner as well as the creation of the ruts or depressions, created a genuine issue of material fact as to whether City had constructive notice of the depression. Major thus maintains that at least a scintilla of evidence exists to support the position that City had constructive notice.

Major further argues the trial court largely based its ruling on a determination that City was not aware of the depression that caused her injuries, and despite several references to constructive notice, in fact applied an actual notice standard. She notes that the trial court's reliance on her own lack of knowledge of the depression at the location is misplaced, because the burden is on City, not her, to keep the premises in a reasonably safe condition, and the issue is whether City had constructive notice, not whether she did. Major takes issue with the trial court's finding that City showed through the testimony of Sanchez, Hoffman, and Gardner that neither City, nor Coker College security, were aware of any rut, depression or defect at the location. She argues (1) constructive knowledge does not require actual knowledge and (2) deposition testimony showed these individuals were aware that depressions had been created at this corner in the past, and City's knowledge of this recurrent condition, as evidenced by Garner's testimony that his department had to keep an eye on the area to make sure it did not create some sort of problem "at a later time," constituted constructive notice of the condition at this corner.

Because I believe the evidence shows there is a genuine issue of material fact on whether City had constructive notice, I would reverse and remand.

The South Carolina Tort Claims Act (SCTCA) provides that "the State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained herein." S.C.Code Ann. § 15–78–40 (2005). Our legislature has, however, provided certain exceptions to a governmental entity's

waiver of immunity. S.C.Code Ann. 15–78–60 (2005 & Supp. 2011).

The parties agree that section 15–78–60(15) of the SCTCA applies to the matter at hand. This section provides, in pertinent part, as follows:

Governmental entities responsible for maintaining highways, roads, streets, causeways, bridges, or other public ways are not liable for loss arising out of a defect or a condition in, on, under, or overhanging a highway, road, street, causeway, bridge, or other public way caused by a third party unless the defect or condition is not corrected by the particular governmental entity responsible for the maintenance within a reasonable time after *actual or constructive notice*.

S.C.Code Ann. § 15–78–60(15) (2005) (emphasis added). Thus, City may be liable for Major's injuries only if it had "actual or constructive notice" of "a defect or a condition."

"Constructive notice and actual notice are not one and the same." *Anderson v. Buonforte*, 365 S.C. 482, 492, 617 S.E.2d 750, 755 (Ct.App.2005). In the context of the SCTCA, "actual notice means all the facts are disclosed and there is nothing left to investigate." *Strother v. Lexington Cnty. Recreation Comm'n*, 332 S.C. 54, 65, 504 S.E.2d 117, 123 (1998). "Actual notice may be shown by direct evidence or inferred from factual circumstances." *Id.* "Notice is regarded as actual where the person sought to be charged therewith either knows of the existence of the particular facts in question or is conscious of having the means of knowing it, even though such means may not be employed by him." *Id.* at 63 n. 6, 504 S.E.2d at 122 n. 6. "Generally, actual notice is synonymous with knowledge." *Id.* On the other hand, in regard to constructive notice, our courts have stated as follows:

Constructive notice is a legal inference which substitutes for actual notice. It is notice imputed to a person whose knowledge of facts is sufficient to put him on inquiry; if these facts were pursued with due diligence, they would lead to other undisclosed facts. Therefore, this person is presumed to have actual knowledge of the undisclosed facts.

*Id.*

Here, I agree with Major that the trial court erred in granting summary judgment to City. While Major concedes

City did not have actual notice of the condition of the corner at the time of her accident, viewing the evidence and reasonable inferences therefrom in a light most favorable to Major, there is a genuine issue of material fact as to whether City had constructive notice of the condition that caused Major's injuries.

There is evidence here that (1) a condition, in the form of a depression, rut or some other defect, existed on the corner where Major sustained her injury, (2) that numerous individuals, who worked for City and the local college, frequently observed vehicles being unable to properly navigate a turn at this specific intersection, resulting in the vehicles cutting over the grassy area of this corner, and (3) both City employee Gardner, the Director of Parks and Leisure Services for City, and Officer Sanchez attributed the depression to the wear and tear from the vehicles cutting across the area. Additionally, I find of particular note the testimony of Gardner, wherein he stated his department addressed the issue in the past by putting sand or clay back in the area, but such effort seemed fruitless, as the area would be in the same condition a few days later, and after two or three attempts to remedy the matter, their solution was to keep an eye on that area to make sure that it did not create some sort of problem at a later time. I believe this testimony provides some evidence City was aware the vehicles were cutting across this particular corner causing the condition, that City attempted in the past to correct the condition, that their attempts appeared futile, and, consequently, there was a need to observe the area thereafter. Accordingly, given the evidence presented, I believe there is a genuine issue as to whether City had knowledge of facts sufficient to put it on inquiry, such that constructive notice was imputed to City. *Strother,* 332 S.C. at 63 n. 6, 504 S.E.2d at 122 n. 6.

I find further support for this conclusion based on our courts' consideration, in the cases of *Fickling v. City of Charleston,* 372 S.C. 597, 643 S.E.2d 110 (Ct.App.2007) and *Wintersteen v. Food Lion, Inc.,* 344 S.C. 32, 542 S.E.2d 728 (2001), that constructive notice may be found where there is a recurring problem. In *Fickling,* the plaintiff filed a negligence action alleging she suffered injuries after she stepped into a hole in a city sidewalk. *Id.* at 600, 643 S.E.2d at 112.

There, this court found conflicting evidence was presented as to whether the City of Charleston had constructive notice of the defect in the sidewalk, observing that in viewing it in a light most favorable to Fickling, there was at least some evidence that (1) there were numerous City of Charleston personnel within the area of the defect who could have seen and reported the problem; (2) the condition had existed for a while; and (3) the City of Charleston had an established policy in place to deal with defects in the sidewalks, and problems with the sidewalks were an expected and "recurrent" or "continual" condition of which it had notice. *Id.* at 610, 643 S.E.2d at 116–17. Additionally, this court noted in *Fickling* that our supreme court observed in *Wintersteen* that two prior slip-and-fall cases involved conditions of such a recurrent nature that the defendants were chargeable with constructive notice on the day of the accident, "because they established certain patterns 'wherein the recurrence is of such a nature as to amount to a continual condition' and this, coupled with other factors, 'may be sufficient to create a jury issue' as to constructive notice." *Fickling,* 372 S.C. at 610 n. 37, 643 S.E.2d at 117 n. 37. In *Wintersteen,* our supreme court stated as follows:

Although mere recurrence alone is insufficient to establish constructive notice, there may be certain factual patterns ... wherein the recurrence is of such a nature as to amount to a continual condition, and that factor, when coupled with other evidence, such as store employees' knowledge thereof, may be sufficient to create a jury issue as to the defendant's constructive notice at the time of the accident.

*Id.* at 36 n. 1, 542 S.E.2d at 730 n. 1.

Thus, while mere recurrence alone is insufficient to establish constructive notice, our courts have intimated that where the recurrence is of such a nature as to amount to a continual condition, that continual condition, when coupled with other evidence such as an employee's knowledge of the recurring nature of the problem, may be sufficient to create a jury issue as to constructive notice at the time of the accident. Here, there was evidence presented that City had knowledge of the recurring problem of vehicles cutting across the corner of the land in question thereby creating a depression in the area, and

that it was a recurring problem that continued even after City's attempts to ameliorate it.

By finding "Major offered no evidence the City was on notice of the particular depression, rut, or hole she alleges caused her injury," the majority is essentially employing an actual notice standard rather than one of constructive notice. In spite of the fact that City may not have been on notice in the days, weeks or months prior to Major's accident that a "particular" defect existed on the corner, such would amount only to actual notice, and I believe the evidence presented shows a genuine issue of material fact as to whether City was on constructive notice of a defect at that location. Accordingly, I would hold the trial court erred in granting City's motion for summary judgment.